Linda WINDSPERGER, Relator,

v.

BROADWAY LIQUOR OUTLET,
Respondent,

Commissioner of Economic
Security, Respondent.

No. C4–82–1687.

Supreme Court of Minnesota.

March 30, 1984.

Lawrence W. Pry, Minneapolis, for relator.

Thomas R. Nelson, Sp. Asst. Atty. Gen., St. Paul, for respondents.

SCOTT, Justice.

This matter is before the court for review on a writ of certiorari to the Commissioner of Economic Security. The issue is whether the relator, Linda Windsperger, should be disqualified from unemployment compensation benefits on the ground that her discharge was for "misconduct" within the meaning of Minn.Stat. § 268.09, subd. 1(2) (1982). The Commissioner, reversing

the Appeal Tribunal, disqualified Windsperger from receiving benefits. We reverse.

Respondent Broadway Liquor Outlet employed Linda Windsperger as a cashier from August 30, 1980, until May 28, 1982. She was discharged while arguing about scheduling with her manager. The argument concerned a scheduling request initially made in writing by Windsperger on May 27, 1982, for permission to leave work two hours early at 1:00 p.m. on Saturday May 29, 1982. She hoped to leave work early that day so her family could leave town early for the Memorial Day weekend.

Her manager denied the request by so indicating on the back of the note when he arrived at work on the following day, May 28, 1982. After several attempts, Windsperger was able to discuss the matter with her manager that evening at about 8:00 p.m. He refused to change his decision because he expected Saturday to be a very busy day. He did say she could leave a half-hour early if she skipped her lunch break.

In the course of the discussion Windsperger asked for permission to leave work early the following Friday. The manager testified that, although such a request would normally be granted, it was not possible to do so for that weekend and that Windsperger became, as he put it, "very upset and threw a temper tantrum." Three times the manager told Windsperger he was warning her, but each time she became angrier and louder. After the third time she was fired on the spot for "insubordination and a temper tantrum."

Windsperger did not use any vulgarity or profanity during the incident, which occurred in the manager's office in the back of the store. No customers in the store heard any of the confrontation. Nothing in the record indicates that other employees could hear the argument. The entire episode took 15 to 20 minutes.

Windsperger testified that she was upset because she had done her employer many favors, had a good work record, and she felt that enough employees were scheduled on May 28 to handle the work without her.

She also testified that she was upset because her manager had been ignoring her and other workers doing the same job were paid more than she.

The manager testified that Windsperger had once, over a year before, thrown a three-minute temper tantrum when told she would not be getting a raise. This old tantrum was not the basis for her dismissal.

The Appeal Tribunal held that, although Windsperger had exhibited poor judgment, the confrontation was an isolated incident not amounting to statutory misconduct. The Commissioner reversed, noting that she had no compelling reason to leave early and her persistence in arguing indicated a lack of concern about her employment. He determined that her action constituted misconduct under *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973), and *Feia v. State Cloud State College*, 309 . Minn. 564, 244 N.W.2d 635 (1976).

The Commissioner erred in determining that Windsperger's conduct constituted misconduct disqualifying her from unemployment compensation benefits under the statute. The employer has the burden of proving an employee guilty of misconduct. *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 459–60, 209 N.W.2d 397, 400 (1973). The disqualification provisions of section 268.09 are to be narrowly construed. *Mortel v. Independent School District No. 831*, 334 N.W.2d 408, 411 (Minn.1983). The issue in this case is not whether Windsperger should have been terminated, but whether, now that she is unemployed, she should be denied unemployment compensation benefits as well.

In *Tilseth*, we adopted the construction of "misconduct" enunciated by the Wisconsin Supreme Court in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941):

> "[T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of stan-

dards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' * * *."

295. Minn. at 374–75, 204 N.W.2d at 646.

Courts in other jurisdictions have held that an isolated temper tantrum or single hotheaded incident of the sort here involved does not amount to misconduct justifying the denial of unemployment compensation benefits. In *Johnson v. Brown*, 134 So.2d 388, 389 (La.App.1961), an employee was discharged for making derogatory remarks about the company to a supervisor when he discovered he had been docked pay for not reporting for work on a day which the company had previously agreed to consider as part of his annual vacation. The court said:

We may at the outset state that a single hotheaded incident cannot be considered the type of premeditated and seriously improper conduct which constitutes, within the meaning of the statute, the serious cause sufficient to deny unemployment compensation benefits to an employee. An employer has, of course, the legal right to discharge an employee without cause or for any cause; but such employee ordinarily is upon application entitled to unemployment compensation benefits when his terminated employment is covered by the Louisiana Unemployment Compensation Law. LSA–R.S. 23:1471 et seq. Those benefits are not paid primarily to reward the employee or to punish the employer, but rather to protect the stability of the state of the family.

134 So.2d at 389.

In *Avery v. B & B Rental Toilets*, 97 Idaho 611, 549 P.2d 270 (1976), an unhappy toilet cleaner "blew his stack" upon discovering a number of particularly dirty units. The court found no misconduct:

Misconduct, which will disqualify a claimant from receiving employment benefits under the Employment Security Act, includes a disregard of standards of behavior which the employer has a right to expect of his employee. While an employer has a right to expect that his employees will not engage in protracted argument after an order or directive is given to an employee, yet he cannot expect that his employees will at all times be absolutely docile or servile.

\* \* \* \* \* \*

* * * The law does not set such a standard. A single incident of comparatively nonserious disrespect by complaining and arguing is not misconduct. 76 Am.Jur.2d, Unemployment Compensation, § 52 and § 55 (1975); and annotation entitled "Employee's Insubordination as Barring Unemployment Compensation," 26 A.L.R.3d 1333 (1969).

In this case we are not concerned with the right of an employer to terminate an employment, but solely with the issue of whether the termination was for "misconduct" within the purview of I.C. § 72–1366(e). Under the facts of this case, we hold that the employee's conduct which precipitated his discharge did not as a matter of law constitute misconduct so as to render appellant ineligible for unemployment compensation benefits.

97 Idaho at 614–15, 549 P.2d at 273–74.

In *Silva v. Nelson*, 106 Cal.Rptr. 908, 31 Cal.App.3d 136 (1973), a supervisor confronted an employee about an unauthorized absence made when the employee felt he was going to "blow up." Upon being asked about his absence the employee said he didn't "give a shit," and may have added "about you or your job." The court, which defined "misconduct" in exactly the same

terms we have used, found that the outburst was "a mere mistake or error in judgment—a 'minor peccadillo'—and is not misconduct disqualifying appellant from unemployment insurance benefits." 106 Cal.Rptr. at 911, 31 Cal.App.3d at 142.

In *Beaird-Poulan, Inc. v. Brady*, 154 So.2d 589 (La.App.1963), an employee, hot and tired after a long night's work, was discharged when he refused his supervisor's order to pick up a mold knocked down by a co-worker. The court found the refusal "a single hotheaded incident" which did not amount to statutory misconduct.

■ In the case at bar, Linda Windsperger's frustration erupted into, as her manager described it, a "temper tantrum." This is the sort of isolated "hotheaded incident" where an employee "blows her stack" which the courts do not consider misconduct justifying denial of unemployment benefits. While we cannot condone Windsperger's irrational outburst at her manager, her tantrum does not evince such a willful disregard for her employer's interests as to justify denying her unemployment benefits now that she is unemployed.

The Commissioner's reliance on *Feia*, 309 Minn. 564, 244 N.W.2d 635, is misplaced. There, a custodian offended by the use of nude models expressed her disapproval to everyone and was discharged for continuing her disruptive activities after being warned to stop. *Feia* is distinguishable because her activities "interfered with her job duties and disrupted the art program." 309 Minn. at 565, 244 N.W.2d at 636. In this case there was no showing that Windsperger's isolated outburst disrupted the store or adversely affected her employer's business.

■ Accordingly, we hold that an isolated hotheaded incident which does not interfere with the employer's business is not misconduct under Minn.Stat. § 268.09, subd. 1(2), justifying a denial of unemployment compensation benefits.

Reversed and remanded with instructions to reinstate the opinion of the Appeal Tribunal.

PETERSON, Justice (dissenting).

Two cases decided today involve discharge for insubordination by an employee and have the same result: *Windsperger v. Broadway Liquor Outlet*, ante p. 142, and *Hamilton v. International Dairy Queen*, 346 N.W.2d 138 (Minn.1984). Both involve an employee's angry outburst directed toward a supervisor. Both involve a determination by the Commissioner of Employment Security that the employee was to be temporarily disqualified from unemployment compensation because of statutory misconduct. Both result in this court's reversal of the commissioner's determination—the first by extended opinion; the second simply by reference to the first. The basis for the decisions is that an "isolated hotheaded incident" does not interfere with the employer's business. By this single opinion, I express my dissent in both decisions of the court.

*Windsperger*

The facts, as succinctly stated by the appeals tribunal and affirmed by the commissioner, are these:

(2) On the morning of May 28, 1982 the claimant left a anote for her employer to the effect that she wanted to leave early on the following day (Saturday, May 29, 1982). The claimant was scheduled to work that Saturday until 3:00 PM.

(3) The employer answered the claimant by writing on the backside of her note to the effect that she could leave at 2:30 PM but not at 1:00 PM. This was the Memorial Day weekend and the employer anticipated a busy day on Saturday.

(4) Throughout the day on May 28, 1982 the claimant attempted to talk with her employer about her leaving early. About 8:00 PM that day, the claimant and the employer discussed the matter. In the course of the conversation, *the claimant became quite loud and violently upset when not allowed to leave early.* The Claimant continued her arguing at which time the employer indicated to the claimant that he had enough and was warning her. *The employer*

*warned the claimant to stop three times,* and finally told the claimant, "You're fired." This all took place within a period of fifteen to twenty minutes. There were customers in the store during this time but these customers were unaware of any arguing or commotion.

(emphasis supplied).

The appeals tribunal concluded:

Based upon a review of the evidence and testimony of record, the tribunal concludes that the claimant, *while her discharge was fully justified from the point of view of the employer,* is not guilty of willful misconduct within the meaning of [Minn.Stat. § 268.09, subd. 1] and [*Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 204 N.W.2d 644 (1973)].

(emphasis supplied).

The commissioner, reversing the decision of the appeals tribunal, concluded in these words:

In the present case, the claimant was clearly advised that she would not be given the two hours off on what the employer termed one of the busiest days in a retail liquor store. The employer had allowed the claimant to leave one-half hour. The claimant had not set out at the hearing or on review any compelling reason for her early departure. *Her persistence in arguing the point after being warned three times by the employer to discontinue clearly indicates a lack of concern for her employment.* This representative does not concur with the Appeal Tribunal that this was merely a single instance of poor judgment.

(emphasis supplied).

The majority opinion does not hold that the action of the employee was not misconduct but holds that one incident should not constitute statutory misconduct. "While we cannot condone Windsperger's irrational outburst at her manager," the majority acknowledges, it nonetheless holds that "her tantrum does not evince such a willful disregard for her employer's interests as to justify denying her unemployment benefits." As a matter of fact, it was not entirely an isolated incident because, as the majority opinion acknowledges, "Windsperger had once, over a year before, thrown a three-minute temper tantrum when told she would not be getting a raise." In *Auger v. Gillette Co.,* 303 N.W.2d 255, 257 (1981), we noted, although in a different episode of misconduct, that "a warning given to employees would have strengthened employer's proof." In this case, as the findings of the appeals tribunal make clear, "[t]he employer warned the claimant to stop three times."

Two elements in the majority's statement of the rule of law are disturbing. First, the majority seems to say that insubordination is permissible if it occurs only once. I cannot accept the notion that any act of insubordination, however deliberate and inexcusable, is permissible if it happens only once. Second, the majority would hold that insubordination is not disqualifying misconduct if other employees or customers do not observe it. The adverse effect of insubordination is not that it is observed by others but, rather, that insubordination, in disregard of proper standards of behavior, interferes with the efficient and cooperative conduct of business. The employee here was attempting to work her will against her employer without regard for the necessities of the business in which she was employed.

In *Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 204 N.W.2d 644, we adopted the construction of "misconduct" as formulated by the Wisconsin Supreme Court in *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941). The *Boynton* case involved an employee who had 3 minor traffic accidents during 2 months of employment but failed to report them, one accident involving a minor personal injury of which he was not actually aware. It was in that context that the Wisconsin court articulated the exception that "mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct.' " 237 Wis.

at 259, 296 N.W. at 640. But for that exception, the general rule of *Boynton* is that "misconduct" is "such wilful or wanton disregard of an employer's interests as is found in deliberate violations or *disregard of standards of behavior which the employer has the right to expect of his employee,* or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial *disregard of the employer's interests or of the employee's duties and obligations to his employer."* *Id.* (emphasis supplied.)

A lower court of Wisconsin, in *Lathrop v. DILHR & Presto Products, Inc.,* No. 163–489 (Wis.Cir.Ct., Dane Cty., March 12, 1979), reads the formulation of *Boynton* differently from this court's decisions today. There, during a meeting to discuss some reports of unsatisfactory work, the employee became angry and, in a vulgarity, told his supervisor where he could "stick it." The court there expressed the opinion that "merely one act of insubordination to a supervisor in the nature of that committed by the employee * * * may properly be found to constitute misconduct." I view the circumstances of the case here as a deliberate and insubordinate attempt by the employee to work her will notwithstanding a reasonable order of the employer. No place of employment, large or small, can operate effectively for the benefit of the employer and other employees where an employee for 15 or 20 minutes evinces defiance or a disaffected attitude toward the reasonable exercise of managerial authority.

I am not unaware of the decisions in other states that may be read to support the result reached by the majority of this court. Those decisions might be more persuasive, however, were it not for the distinguishing fact that the insubordinate conduct in this case was in the face of repeated warnings to desist. I observe, too, that similar authorities are not followed by the court in the companion case of *Hamilton v. International Dairy Queen.*

*Hamilton*

The findings of fact made by the appeals tribunal of the Department of Employment Security and confirmed by the commissioner are these:

(2) The claimant [director of construction for the employer, International Dairy Queen, Inc.] did not have a good working relationship with his supervisor, the Vice-President for facilities.

(3) The claimant has recently had heart surgery and had been on a leave of absence for an extended period of time, returning in February of 1982. The claimant also has had other serious medical problems. The employer has always accommodated the claimant in any work restrictions that he had due to his medical condition.

(4) On August 13, 1982 the claimant's supervisor was giving him a personnel evaluation. The possibility of the claimant having to work a twelve to fourteen hour day sometime in the future was discussed. The claimant mentioned that he might not be able to handle such hours with his condition. The claimant wanted to discuss the salary increase he could expect to receive. The supervisor told him he could not discuss it with him. The company policy is not to give the employee the specific figure until it is approved by higher management. The vice-president said something to the effect, "I can do anything I want with you." *The claimant became incensed and said "F__k you, you son of a b...h."*

(emphasis supplied.)

The commissioner concluded:

The claimant contends that he was provoked into the outburst which took place. We do not find that the record supports this contention. While the vice-president of facilities was clearly callous in telling the claimant that he could do anything he wanted with the claimant, the evidence demonstrates that the claimant was sufficiently aware that any actions undertaken by the vice-president of facilities

would be reviewed by upper management. The claimant was certainly aware that he had avenues to appeal any action taken against him by his supervisor. *The claimant's response in swearing at his supervisor was uncalled for and unexecuseable.* The record does seem to demonstrate that the claimant has a temper and it is argued by the claimant that such an outburst should not amount to misconduct. *We will not base our decision upon a question of whether an individual has a temper or not, such that those individuals who have a temper could be excused and those who do not, could not be.* We fail to see how an employer could operate a business and allow employees to swear at their supervisors. This employment was not in a factory setting and there is no evidence to demonstrate that such language was in any way commonplace. *While an individual may well become angry and frustrated, it is incumbent upon an employee to remain civil and conduct of the type demonstrated by the claimant is certainly in disregard of the standards of the behavior which an employer has a right to expect.* We therefore concur with the Appeal Tribunal when it held that the claimant was discharged for reasons amounting to misconduct under the Minnesota Employment Services Law.

(emphasis supplied).

If we are to give persuasive effect to decisions of other jurisdictions, we should consider those decisions holding that the use of vulgarity or profanity toward supervisors is statutory misconduct. One, inferentially, is *Avery v. B & B Rental Toilets*, 97 Idaho 611, 549 P.2d 270 (1976), cited by the majority in its opinion in *Windsperger*. Although the *Avery* court concluded that there was no misconduct when an unhappy toilet cleaner "blew his stack" upon discovering a number of particularly dirty units, the court noted that "[t]here was no evidence that [the employee] used vulgar or abusive language during the conversation." 97 Idaho at 615, 549 P.2d at 274.

*Brostven v. Beatrice Foods, Inc. and DILHR*, No. 80–CVD–867 (Wis.Cir.Ct., Rock Cty., Nov. 26, 1980), involved the discharge of an employee who objected to and argued about a work assignment in the course of receiving the directive of his supervisor. The employee used abusive language, made an obscene gesture, and signed out 2 minutes early. The court stated that no employer should be required to tolerate such abuse or insolence and noted the need for complete cooperation and respect for authority for an organization to function properly. For other cases finding insubordinate misconduct for use of vulgarity or abusive language, see *Olsgard v. Industrial Commission*, 190 Colo. 472, 548 P.2d 910 (1976); *Acord v. Labor and Industrial Relations Commission*, 607 S.W.2d 174 (Mo.App.1980); *Choute v. Ross*, 60 A.D.2d 738, 400 N.Y.S.2d 907 (1977); *Henry v. Unemployment Compensation Board of Review*, 57 Pa.Cmwlth. 192, 425 A.2d 1210 (1981) ("[the] choice of terminology, in itself, supports the finding that [the employee] was insubordinate. Insubordinate vulgarity constitutes wilful misconduct.").

The conduct of this employee involved patently unacceptable language and an attitude totally out of place at any level of employment, not excluding high levels of management. Whether the language was heard by others or whether it was a single episode makes it no less unacceptable. Reversal of the commissioner undermines the state policy of using unemployment compensation reserves for the benefit of employees unemployed through no fault of their own. I would affirm.

SIMONETT, Justice (dissenting).

I join Justice Peterson's dissent in *Windsperger*. In the companion *Hamilton* case, I think we have an isolated, hotheaded, non-business disruptive incident, and so I join that majority.

KELLEY, Justice (dissenting).

I join the dissent of Justice Peterson.

COYNE, Justice (dissenting).

I join in the dissent of Justice Peterson.