**MANKATO LUTHERAN HOME, Relator,**

v.

**Barbara MILLER and Commissioner of Economic Security, Respondents.**

No. CX–84–855.

Court of Appeals of Minnesota.

Nov. 13, 1984.

Review Denied Feb. 6, 1985.

Charles F. Bisanz, Margaret M. Cain, Felhaber, Larson, Fenlon & Vogt, St. Paul, for relator.

Randy J. Zellmer, Johnson & Moonan, Mankato, for Miller.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Economic Sec.

Heard, considered and decided by POPO-VICH, P.J., and PARKER, and LANSING, JJ.

## OPINION

LANSING, Judge.

Mankato Lutheran nursing home appeals from the Commissioner of Economic Security's decision that Barbara Miller was not terminated for misconduct that would disqualify her from receiving unemployment compensation benefits. The employer contends that Miller's use of profane language in front of nursing home residents was intentional misconduct which would disqualify her. We affirm.

## FACTS

Barbara Miller was employed as a full-time nursing assistant by Mankato Lutheran nursing home from November 25, 1978, through November 21, 1983. She worked the 11 p.m. to 7 a.m. shift. Miller developed bronchitis in late October 1983 but continued to work. She visited a physician twice. On the night of November 17, 1983, she told her supervisor, Fern Darkow, that she was ill and might not be able to complete her shift. Darkow was aware that Miller had been sick during the preceding few weeks but said she did not know what could be done because it was too late to find a replacement for that shift.

Miller's symptoms worsened during the shift. At 2:30 a.m. Darkow called Miller from another floor to ask if she wanted any coffee. Miller again told her that she was not feeling well and doubted that she could finish the shift.

At about 4 a.m. when Darkow returned to the floor she found Miller crying at the nurse's station. Miller told Darkow she was experiencing severe back and chest pain, was nauseated, and was having trouble breathing. Darkow took her temperature, which was about 100 degrees. Darkow said again that it was too late to get a replacement and that she herself was not feeling well and should not have been at work. She also said that she came to work "regardless of how [she felt]."

At about 4:45 a.m. Miller called her husband, who had recently had a heart attack, to see if her symptoms were the same as

his had been. He suggested that she come home, but she refused because she was afraid she would lose her job if she walked off or insisted on leaving.

At about 5:30 a.m. Darkow entered a patient's room where Miller was helping a resident get dressed. When she asked how Miller was feeling, Miller became upset and said "What the hell do you care, you don't think I'm sick anyway. I could drop over dead and I'd still have to do these damn people." Darkow retorted that Miller should not have come to work if she was so sick, and Miller yelled back "I never had this goddamn pain until I came to this f***ing hole." The two residents in the room heard the exchange and one was upset by it.

Miller completed her shift and went to a physician later that day. The physician found no evidence of a heart attack and attributed Miller's symptoms to the bronchial infection.

Darkow reported the incident to the nursing director, who terminated Miller on November 21. Miller's explanation for her behavior was that she had exploded because she was sick and believed Darkow did not care. This was the first misconduct complaint against Miller in her five years of employment at Mankato Lutheran nursing home.

After Miller filed a claim for unemployment benefits a claims deputy and the Appeals Tribunal both found that she was discharged for misconduct and was therefore disqualified from receiving benefits. A representative of the Commissioner reversed on the ground that it was an isolated, hotheaded incident. *See Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142 (Minn.1984).

## ISSUE

Does the record support the Commissioner's finding that an isolated use of profane language, in front of nursing home residents when the employee was ill, was not misconduct under Minn.Stat. § 268.09, subd. 1(2) (Supp.1983)?

## ANALYSIS

The final decision of the Commissioner of Economic Security will not be disturbed where there is reasonable evidence tending to support it. *Booher v. Transport Clearings of Twin Cities, Inc.*, 260 N.W.2d 181, 183 (Minn.1977). Misconduct, as a disqualification from receiving unemployment compensation benefits, is to be narrowly construed. *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 222 (Minn.1981); *Group Health Plan, Inc. v. Lopez*, 341 N.W.2d 294, 296 (Minn.Ct.App. 1983). The employer has the burden of proving misconduct. *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 459–60, 209 N.W.2d 397, 400 (1973); *Johnson v. Ford Motor Co.*, 289 Minn. 388, 403, 184 N.W.2d 786, 797 (1971). The issue is not whether Miller should have been terminated but whether, now that she is unemployed, she should be denied unemployment compensation benefits as well. *See Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142, 143 (Minn.1984).

The Minnesota Supreme Court has defined misconduct as willful or wanton disregard for an employer's interests, as distinguished from other unsatisfactory conduct. *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973). In *Windsperger* the court held that "an isolated hotheaded incident which does not interfere with the employer's business is not misconduct" justifying a denial of unemployment benefits. *Windsperger,* 346 N.W.2d at 145.

In the present case the Commissioner's representative found *Windsperger* controlling. He stated:

[T]he claimant's actions were inexcusable. The crude language was directed at the claimant's supervisor. The remarks were not essentially directed at the patient although it is apparent that the patients were upset. The employer may well have exercised good business judgment in determining that the claimant's employment should be terminated rather than have a similar uncontrolled incident.

However, misconduct within the meaning of Windsperger supra has not been established. The decision of the Referee must therefore be reversed.

In *Windsperger* the employee argued loudly and became violently upset with her employer in a dispute over scheduling. In the companion case, *Hamilton v. International Dairy Queen, Inc.*, 346 N.W.2d 138 (Minn.1984), the employee, who also had serious medical problems, said "F*** you, you son of a bitch" to a supervisor during a personnel evaluation. *Windsperger*, 346 N.W.2d at 147 (Peterson, J., dissenting) (discussing *Hamilton* facts). The present case is distinguishable only because the incident occurred in front of nursing home residents.

The employer contends that because of this distinction *Windsperger* and *Hamilton* do not control. It contends that *Ideker v. LaCrescent Nursing Center, Inc.*, 296 Minn. 240, 207 N.W.2d 713 (1973), governs instead. In *Ideker* a nurse's aide was discharged because of two incidents of verbal abuse directed at a patient.

 We disagree and hold that this was an isolated incident controlled by *Windsperger* because the supervisor was partly responsible for the outburst occurring where it did. The record shows that Miller's illness and frustration increased over the course of several hours until she exploded emotionally. The supervisor knew that Miller was extremely upset, yet she continued the discussion in front of the patients. The most profane language was not spoken until after Darkow further antagonized her. Miller's outburst was directed toward Darkow, not the residents. Miller performed all her job duties and finished the shift. She had no prior record of misconduct in five years of employment.

The employer argued strongly that this decision would stand for the proposition that nursing home employees who are responsible for the care of elderly residents "will be allowed to use vulgar and profane language in front of said residents * * * if it occurs only once." As the court pointed out in *Windsperger*, however, the issue is not whether the employee should have been fired but whether unemployment benefits should be denied as well. *Windsperger*, 346 N.W.2d at 143.

The record supports the Commissioner's finding that Miller should not be disqualified from unemployment compensation benefits. Her conduct was an isolated outburst, provoked in part by her supervisor. It does not demonstrate an intentional disregard of the employer's interests or of her duties and obligations. *See Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973); *see also Sticha v. McDonald's $291*, 346 N.W.2d 138, 140 (Minn. 1984); *Flannigan v. Meadow Lane Health Care Center*, 347 N.W.2d 852, 853 (Minn. Ct.App.1984).

**DECISION**

We affirm the decision of the Commissioner's representative that Miller is not disqualified from receiving unemployment compensation benefits.

Affirmed.