James **NORMAN**, Relator,

v.

**ROSEMOUNT, INC.**, Department of Economic Security, Respondents.

No. C1–85–1743.

Court of Appeals of Minnesota.

March 18, 1986.

Review Denied May 22, 1986.

Robert H. Rydland, Minneapolis, for James Norman.

---

Robert S. Halagan, Minneapolis, for Rosemount, Inc.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Sec.

Heard, considered and decided by the court en banc, consisting of POPOVICH, C.J., and PARKER, FOLEY, WOZNIAK, SEDGWICK, LESLIE and NIERENGARTEN, JJ.

## OPINION

LESLIE, Judge.

James Norman appeals by writ of certiorari from a determination that his actions in throwing a crumpled piece of paper at his supervisor and walking away constituted misconduct. We reverse.

## FACTS

On February 13, 1985, James Norman was asked to meet with his supervisor, David Carlson, in the cafeteria of Rosemount, Inc. to discuss his salary. This meeting was the last in a series of seven which constituted Norman's performance evaluation. Other employees were sitting in the cafeteria, but were some distance away.

Rosemount has five performance levels, and "acceptable" is the fourth from the top. Norman was already aware that he was going to be rated "acceptable." Norman also knew how that would affect his future salary.

Carlson showed Norman a document indicating Rosemount's pay scale and explained how Norman's salary would fit into the scale. Norman responded by asking Carlson if he didn't believe Norman was doing his job, and when Carlson admitted that this was true, Norman stood up, crumpled up a piece of paper, threw it at Carlson, and walked away. The paper hit Carlson on his forehead and bounced back on the table.

Norman was discharged by Rosemount, and applied for unemployment compensation. He was awarded benefits, and Rosemount filed an appeal. At the hearing held before a Department referee, Norman claimed that his actions had been provoked by Carlson, who had used foul and insulting language. Carlson denied those allegations.

After listening to both parties' testimony, the referee determined that Carlson's testimony was more believable, and concluded that Norman's actions constituted misconduct. Norman appealed, and a Commissioner's representative affirmed, deferring to the referee's determination regarding credibility.

## ISSUES

1. To meet its burden of proving misconduct, was Rosemount required to provide evidence corroborating Carlson's testimony?

2. Did Norman's actions constitute an isolated, hotheaded incident?

## ANALYSIS

An employee who is discharged for misconduct is disqualified from receiving unemployment compensation benefits. Minn. Stat. § 268.09, subd. 1(2) (1984). The definition of "misconduct" is found in *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973).

> [T]he intended meaning of the term "misconduct" * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in

judgment or discretion are not to be deemed "misconduct."

*Tilseth,* 295 Minn. at 374–75, 204 N.W.2d at 646 (quoting *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)).

### I.

■ Both the referee and the Commissioner's representative found Carlson's testimony more credible and determined that he did not provoke Norman's actions. We will generally defer to the Commissioner's determinations regarding credibility. *Cary v. Custom Coach, Inc.,* 349 N.W.2d 331, 332 (Minn.Ct.App.1984).

Norman points out that an employer has the burden of proving by a preponderance of the evidence that an employee was guilty of misconduct. *Lumpkin v. North Central Airlines, Inc.,* 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973). Norman concludes that because his testimony contradicted Carlson's testimony, Rosemount must provide corroborating evidence to meet its burden of proving misconduct.

■ There is no rule that to meet its burden of proof an employer must provide corroborating evidence of misconduct. Norman's argument is therefore without merit.

### II.

Although Norman's actions were not provoked by Carlson, we must still determine whether those actions constituted misconduct within the meaning of the unemployment compensation laws,[1] or whether, as Norman claims, his conduct was simply an isolated, hotheaded incident. In *Windsperger v. Broadway Liquor Outlet,* 346 N.W.2d 142 (Minn.1984), our supreme court held that "an isolated hotheaded incident which does not interfere with the employer's business is not misconduct * * * justifying a denial of unemployment compensation benefits." *Id.* at 145. Rosemount,

however, argues that because this was an unprovoked physical confrontation involving a supervisor, it cannot fall under the hotheaded incident exception to misconduct.

#### A. *Physical versus nonphysical confrontations*

In *Hines v. Sheraton Ritz Hotel,* 349 N.W.2d 329 (Minn.Ct.App.1984) and *Tester v. Jefferson Lines,* 358 N.W.2d 143 (Minn. Ct.App.1984), *pet. for rev. denied,* (Minn. Mar. 13, 1985), we noted that the hotheaded incident exception had never been applied in circumstances involving physical confrontations. However, in *Oman v. Daig Corp.,* 375 N.W.2d 533 (Minn.Ct.App.1985), in which an employee lost her temper, pushed a coworker into a chair and pulled off her workcap, this court applied the hotheaded incident exception, distinguishing *Hines* and *Tester.* Likewise, those cases are distinguishable from the present situation.

In *Hines,* an employee was discharged following a somewhat prolonged scuffle between the employee and a coworker, which took place in the employer-hotel's elevator. The scuffle involved "grabbing, pushing and shouting," and the two employees had to be physically separated by others. The employer's handbook, which the employee had read, expressly prohibited fighting or other acts of violence. This court determined that the employee's actions constituted misconduct, stating that "[a]n employer has a right to expect employees not to physically fight at work." *Hines,* 349 N.W.2d at 330.

Here, on the other hand, the "physical" confrontation involved only a piece of crumpled paper hastily, albeit hostilely, thrown at Carlson. The conflict was not prolonged, and Norman immediately walked away. There is no evidence that anyone else witnessed the event. As in *Oman,* the "assault," if indeed this mini-

---

1. Although this court is bound by the factual findings of the Commissioner's representative, the determination of whether an employee's conduct constitutes an isolated, hotheaded inci-

dent may be decided by this court as a matter of law. *See Windsperger,* 346 N.W.2d 142 (Minn. 1984).

mal conduct may be characterized as such, was much less serious than in *Hines.*

In *Tester,* there was evidence that an employee had acted deliberately when he blocked one of his employer's buses during a strike by another bus company, uttered obscenities at management personnel, and had to be pushed out of the way by a police officer. In refusing to apply the isolated, hotheaded incident exception, this court stated as follows:

> There is no indication that either act was the result of a "temper tantrum" arising from the heat of the moment or from provocation from the employer. *Windsperger; Little v. Larson Bus Service,* 352 N.W.2d 813 (Minn.Ct.App.1984). Further, the hotheaded incident exception has never been applied to a physical confrontation. *See Hines v. Sheraton Ritz Hotel,* 349 N.W.2d 329, 330 (Minn. Ct.App.1984).

> The strike was not against Tester's employer, and his conduct cannot be excused as normal picket line activity. Because both incidents occurred in the presence of other employees and could have incited other aggressive behavior, they were likely to interfere with the employer's business.

*Tester,* 358 N.W.2d at 145–46.

█ Again, there is no evidence in the present case that Norman's brief outburst could have incited aggressive behavior by other employees. Nor did Norman's behavior interfere with Rosemount's business, other than halting his own salary review. *Tester* may be further distinguished because the employee's actions there did not arise either from provocation or from the "heat of the moment." Here, on the other hand, Norman's behavior, although unprovoked, was clearly the result of the "heat of the moment." *Tester,* as well as *Hines,* is therefore distinguishable. We stress also that the "physical" manifestation of Norman's feelings was minimal. Norman did not actually make physical contact with Carlson; rather, he threw a harmless piece of paper at his supervisor. Although Carlson would naturally feel insult-

ed by such behavior, we believe Norman's conduct was no more egregious than that in *Mankato Lutheran Home v. Miller,* 358 N.W.2d 96 (Minn.Ct.App.1984), in which the following conduct was held not to constitute misconduct:

> At about 5:30 a.m. [the supervisor] entered a patient's room where [the employee] was helping a resident get dressed. When she asked how [the employee] was feeling, [the employee] became upset and said "What the hell do you care, you don't think I'm sick anyway. I could drop over dead and I'd still have to do these damn people." [The supervisor] retorted that [the employee] should not have come to work if she was so sick, and [the employee] yelled back "I never had this goddamn pain until I came to this f* * *ing hole." The two residents in the room heard the exchange and one was upset by it.

*Id.* at 98.

B. *Provocation versus unprovoked conduct*

As noted above, *Tester* suggests that an isolated instance of hotheaded conduct need not be provoked, but may be a reaction to the "heat of the moment," as was the case here.

*Windsperger* also supports this interpretation of the hotheaded incident cases. In *Windsperger,* an employee was discharged for arguing with her manager about scheduling. The argument was described by the court as follows:

> The argument concerned a scheduling request initially made in writing by Windsperger * * * for permission to leave work two hours early * * * on Saturday * * *.

> *       *       *       *       *       *

> Her manager denied the request * * * [and] * * * refused to change his decision * * *. He did say she could leave a half-hour early if she skipped her lunch break.

> In the course of the discussion Windsperger asked for permission to leave work early the following Friday. The

manager testified that, although such a request would normally be granted, it was not possible to do so for that weekend and that Windsperger became, as he put it, "very upset and threw a temper tantrum." Three times the manager told Windsperger he was warning her, but each time she became angrier and louder. After the third time she was fired on the spot for "insubordination and a temper tantrum."

*Windsperger,* 346 N.W.2d at 143. The court made no indication that the employee's outburst had been provoked by her supervisor; rather, the court characterized her behavior as "irrational."

Cases cited by the *Windsperger* court also did not indicate reliance upon provocation as justification for the employees' outbursts. In *Avery v. B & B Rental Toilets,* 97 Idaho 611, 549 P.2d 270 (1976), a toilet cleaner "blew his stack" upon discovering several particularly dirty toilets. In *Silva v. Nelson,* 31 Cal.App.3d 136, 106 Cal.Rptr. 908 (1973), an employee, when asked about an unauthorized absence, responded that he didn't "give a shit" and may have added "about you or your job." In *Beaird-Poulan, Inc. v. Brady,* 154 So.2d 589 (La.App. 1963), an employee who had worked a long night and was hot and tired, refused an order by his supervisor that he pick up a mold which had been knocked down by his coworker. None of these isolated, hotheaded incident cases involved provocation.

The *Windsperger* holding also did not indicate that an employee must be provoked before the hotheaded incident exception will be applied.

Accordingly, we hold that an isolated hotheaded incident which does not interfere with the employer's business is not misconduct under Minn.Stat. § 268.09,

subd. 1(2), justifying a denial of unemployment compensation benefits. *Windsperger,* 346 N.W.2d at 145.

Under any reasonable construction of the facts it must be found that Norman's response to the situation was not a deliberate act of insubordination or a rational decision,[2] but was a hotheaded response to a stressful situation. Although the employer had the right to fire Norman for this conduct, denial of unemployment compensation benefits in this instance runs contrary to previous hotheaded incident cases decided by this court.[3]

### C. *Supervisor versus coworkers*

Rosemount finally seeks to distinguish this case from other hotheaded incident cases on the basis that Norman's display of temper was directed at his supervisor, rather than at a coworker. Although this is a factor to be considered along with all others, we do not believe that in this instance the distinction is determinative. We note that in other cases an employee's outburst directed at a supervisor has been held to constitute a single hotheaded incident. For example, in *Mankato Lutheran Home,* 358 N.W.2d at 99, the court specifically noted that the outburst was directed towards a supervisor rather than towards a resident of the home. Similarly, in *Windsperger,* 346 N.W.2d at 143, the employee's temper tantrum occurred as a result of a disagreement with the manager.

Although we are sympathetic to an employer who is subjected to either verbal or limited physical abuse by an employee, *Windsperger* nonetheless demands that a discharged employee be awarded unemployment compensation benefits if such outburst was truly an isolated, hotheaded incident which did not interfere with the employer's business. Here, Norman found

**2.** *C.f. Daniels v. Gnan Trucking,* 352 N.W.2d 815 (Minn.Ct.App.1984) (deliberate refusal to unload employer's vehicle was an act of insubordination, rather than a hot-headed incident); *Little v. Larson Bus Service,* 352 N.W.2d 813 (Minn.Ct.App.1984) (a deliberate, rational decision not to report to work did not constitute an isolated hotheaded incident).

**3.** "The issue * * * is not whether [an employee] should have been terminated, but whether, now that she is unemployed, she should be denied unemployment compensation benefits as well." *Windsperger,* 346 N.W.2d at 143.

himself in a stressful situation. He had been subjected to six other evaluation sessions and he was aware that his employer considered his performance merely "adequate." Other employees who could have overheard Carlson's criticism were seated in the cafeteria (an unusual, if not inappropriate, place to hold a salary evaluation). Although Norman was not verbally provoked by Carlson, the employer's use of multiple evaluation sessions and the choice of a public area in which to inform Norman of his merely adequate performance and corresponding salary contributed to an aura of provocation. Further stress was added by Carlson's response that he was not doing his job. Throwing a crumpled piece of paper at Carlson was an irrational response to the situation and may have warranted Norman's discharge; however, Norman's response to the heat of the moment clearly falls within the ambit of the hotheaded incident exception recognized in *Windsperger* and its progeny.

## DECISION

Relator was not guilty of misconduct and is entitled to receive unemployment compensation benefits. Because we reverse, we need not address the additional issues raised by relator.

Reversed.

SEDGWICK and FOLEY, JJ., dissent.

SEDGWICK, Judge (dissenting).

I respectfully dissent. Norman's outburst was not the type of isolated, hotheaded incident recognized by *Windsperger*. Norman was neither harassed nor provoked by Carlson; thus the "hot-headed" element crucial to the *Windsperger* exception is clearly lacking here.

Norman was fully aware before he met with Carlson that his performance was considered only "acceptable" by the company, and that his salary was to be adjusted accordingly. When he asked whether Carlson did not believe he was doing his job, Norman already knew what Carlson's response would be. Norman's reaction was not the type of sudden uncontrolled response to an immediately preceding series of events, accusations or harassment present in other hot-headed incident cases. Rather, crumpling the paper and throwing it at Carlson was a deliberate insult. This was an unprovoked and unwarranted act of contempt towards a superior which not only justified Norman's discharge, but also constitutes misconduct within the meaning of the unemployment compensation laws. I would affirm the Commissioner's decision.

FOLEY, Judge (dissenting).

I join in the dissent of Judge Sedgwick.