William McCOY, Relator,

v.

SPICER OFF–HIGHWAY AXLE DIVISION, Respondent,

Commissioner of Jobs and Training, Respondent.

No. C6–87–575.

Court of Appeals of Minnesota.

Sept. 15, 1987.

Laurie A. Vasichek, Legal Advice Clinics, Minneapolis, for relator.

Robert C. Boisvert, Jr., Fredrikson & Byron, P.A., Minneapolis, for Spicer Off-Highway Axle Division.

Hubert H. Humphrey, III, State Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs and Training.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and HUSPENI, JJ.

## OPINION

FOLEY, Judge.

Relator William McCoy appeals by writ of certiorari from a determination that when he threw a hammer at a door in his supervisor's office, he thereby engaged in misconduct disqualifying him from the receipt of unemployment compensation benefits. Concluding that McCoy's behavior falls within the isolated hotheaded incident exception to misconduct, we reverse.

## FACTS

Relator William McCoy worked for approximately eight years as a maintenance mechanic for respondent Spicer Off-Highway Axle Division. Spicer manufactures off-the-road axles, and McCoy was responsible for maintaining the machinery in Spicer's plant.

McCoy's supervisor, Del Lund, generally met with McCoy and the other maintenance workers at 3:00 p.m. each day to discuss their work assignments for the second shift. On September 23, 1986, the maintenance employees were late for the 3:00 meeting, and Lund became upset, began arguing with one of the other maintenance employees, and then indicated that he was dissatisfied with some of McCoy's proce-dures. McCoy, in turn, became upset, asked "Is there any damn thing I can do right?", or words to that effect, and threw a hammer on the floor, towards the door and away from Lund's desk. The hammer struck the floor and bounced off the door, causing minor damage to the door. McCoy had been carrying the hammer because he had brought it from home and wanted to show it to Lund.

Lund called his supervisor, and McCoy was chastised for losing his temper. McCoy responded that he could take care of himself and his family if anyone caused them trouble.

McCoy was discharged for insubordination and using threatening language. He applied for unemployment compensation, but was denied benefits on the grounds that his threats constituted misconduct. He appealed to a department referee who, after taking testimony from the parties, affirmed the initial misconduct determination. The referee found that Lund had felt threatened by McCoy's actions, but that McCoy had thrown his hammer "in disgust, without intending to harm the employer or the supervisor". The referee also found that McCoy "did not make any statements with intent to harm or threaten his supervisor or anyone else". Nevertheless, the referee concluded that McCoy exhibited behavior which was improper and was "a deliberate violation of the employer's interests and of the standards of behavior which the employer had a right to expect from [McCoy]."

McCoy appealed to a Commissioner's representative, who found that McCoy had thrown his hammer "at a door," and concluded that McCoy's behavior constituted misconduct.

## ISSUE

1. Did the Commissioner's representative err by finding that McCoy threw his hammer at the door?

2. Did McCoy's behavior constitute misconduct disqualifying him from the receipt of unemployment compensation benefits?

## ANALYSIS

1. This court's scope of review of the Commissioner's findings of fact is limited to determining whether those findings are reasonably supported by the record. *White v. Metropolitan Medical Center,* 332 N.W.2d 25, 26 (Minn.1983). Here, there is evidence in the record which sustains the Commissioner's finding that McCoy threw his hammer "at a door". Specifically, Lund testified:

> I mean he got very unhappy, and at that point led to throwing the hammer at the door or at the floor, bounced up and hit the door.
>
>   \*    \*    \*    \*    \*    \*
>
> [A]nd the door was off to his right and ahead of him, and this is what he threw it at, the door, the hammer, \* \* \*.

■ 2. Whether an employee's behavior constituted misconduct disqualifying him from the receipt of unemployment compensation benefits is a question of law. *Dean v. Allied Aviation Fueling Co.,* 381 N.W.2d 80, 83 (Minn.Ct.App.1986). This court therefore need not defer to the Commissioner's determination. *Talberg v. Commissioner of Economic Security,* 370 N.W.2d 686, 688 (Minn.Ct.App.1985). "Misconduct" is defined as follows:

> "\* \* \* [T]he intended meaning of the term 'misconduct' \* \* \* is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' \* \* \*."

*Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). The issue is not whether an employer was justified in discharging an employee, but whether the discharged employee is entitled to receive unemployment compensation benefits. *St. Williams Nursing Home v. Koep,* 369 N.W.2d 33, 34 (Minn.Ct.App. 1985).

■ In *Windsperger v. Broadway Liquor Outlet,* 346 N.W.2d 142 (Minn.1984), the supreme court held that "an isolated hotheaded incident which does not interfere with the employer's business is not misconduct \* \* \* justifying a denial of unemployment compensation benefits". *Id.* at 145. *Windsperger* involved a situation where an employee was discharged for arguing with her manager about scheduling. The court described the employee's behavior as follows:

> Windsperger became, as [her manager] put it, "very upset and threw a temper tantrum." Three times the manager told Windsperger he was warning her, but each time she became angrier and louder. After the third time she was fired on the spot for "insubordination and a temper tantrum".

*Id.* at 143.

Cases following *Windsperger* include *Oman v. Daig Corp.,* 375 N.W.2d 533 (Minn.Ct.App.1985), and *Norman v. Rosemount, Inc.,* 383 N.W.2d 443 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. May 22, 1986). In *Oman,* an employee lost her temper, pushed a co-worker into a chair, and pulled off her work cap. 375 N.W.2d at 535. In *Norman,* the employee had met with his supervisor in the company cafeteria to receive a performance evaluation. When the supervisor indicated that he did not believe the employee had been doing his job, the employee stood up, crumpled up a piece of paper, threw it at the supervisor, and walked away. The paper hit the supervisor on his forehead and bounced back on the table. 383 N.W.2d at 444.

The Commissioner's representative distinguished the present case from *Oman,*

because the employee's conduct in *Oman* was provoked. This court indicated in *Norman,* however, that a finding of provocation is not necessary when applying the isolated hotheaded incident exception to misconduct. *Id.* at 447.

The Commissioner's representative also distinguished the facts of *Norman,* concluding that throwing a hammer is much more serious and dangerous than throwing a crumpled piece of paper.

In *Norman,* the employee threw the crumpled up paper directly at his supervisor's face, whereas here McCoy threw his hammer away from his supervisor, at the floor and towards the door. He was clearly as frustrated as the employee in *Norman.*

McCoy had worked for Spicer for eight years, and his confrontation with Lund was brief and isolated; an act generated by frustration and the heat of the moment. We therefore conclude that McCoy's behavior falls within the isolated hotheaded incident exception to misconduct.

## DECISION

The Commissioner's representative erred by concluding that McCoy's actions constituted disqualifying misconduct.

Reversed.

POPOVICH, Chief Judge (dissenting).

I respectfully dissent and would affirm the decision of the Commissioner's representative that McCoy's behavior constituted misconduct because:

1. This case is distinguishable from *Norman v. Rosemount, Inc.,* 383 N.W.2d 443 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. May 22, 1986). As the Commissioner's representative reasoned:

> Throwing a hammer in the workplace environment is inherently more dangerous than throwing a crumpled ball of paper. Notwithstanding the fact that the claimant herein did not throw the hammer at his supervisor, he did throw it at a door, struck the door, and caused damage to the door. * * * Clearly, a supervisor has a legitimate right to rea-

sonably criticize an employee's work performance and to threaten an employee with discipline if his behavior is not in accordance with the employer's standards. The claimant herein made no showing that the supervisor's assessment of his work performance was either arbitrary or unreasonable and even if it were, surely an employer has a reasonable expectation that employees, even when upset by a supervisor's criticisms, will not engage in throwing hammers in the workplace. Though the damage incurred in this case was minor, the potentially serious damage that may have resulted from the claimant's behavior cannot be overlooked.

Clearly McCoy's behavior caused an unsettled environment and could have incited aggressive behavior by other employees. *Cf. Norman,* 383 N.W.2d at 446 (employee throwing crumpled piece of paper at supervisor held not misconduct but hotheaded incident).

2. For behavior to constitute an isolated hotheaded incident which is not misconduct, the incident must not interfere with the employer's business. *See Windsperger v. Broadway Liquor Outlet,* 346 N.W.2d 142, 145 (Minn.1984). Here, where McCoy's behavior occurred in the presence of other employees and could easily have incited their aggressive behavior, that conduct likely interfered with the employer's business. *See Tester v. Jefferson Lines,* 358 N.W.2d 143, 145–46 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Mar. 13, 1985).

3. The dangerous nature of McCoy's behavior, the interference with his employer's business, and McCoy's general disregard of his employer's interests leads me to conclude his behavior constituted misconduct. *See Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973). McCoy should be disqualified from the receipt of unemployment compensation benefits.