Todd D. SHELL, Relator,

v.

HOST INTERNATIONAL (CORP.), Respondent,

Commissioner of Jobs and Training, Respondent.

No. C7–93–2151.

Court of Appeals of Minnesota.

March 15, 1994.

Todd D. Shell, pro se.

Host Intern. (Corp.), c/o The Frick Co., St. Louis, MO, for respondent Host Intern. (Corp.).

Kent E. Todd, Minn. Dept. of Jobs & Training, St. Paul, for respondent Com'r of Jobs and Training.

Considered and decided by HUSPENI, P.J., and PARKER and NORTON, JJ.

## OPINION

PARKER, Judge.

Relator Todd Shell argues that his physical assault of a supervisor constituted a hot-headed incident, not misconduct. We disagree and affirm.

### FACTS

Host International Corp. employed relator Todd Shell full time as a maintenance worker from April 21, 1981, through May 26, 1993.

On the morning of May 24, 1993, Shell was repairing an oven in a restaurant. He told his supervisor, Joe Svoboda, that the oven needed a new conveyor belt. Svoboda went to his office to look for paperwork pertaining to the conveyor belt. A few minutes later, Shell entered the office. Rick Soj, another maintenance worker, was nearby. The facts thus far are undisputed.

Svoboda testified that he asked Shell if he had the model number of the oven and that Shell responded by swearing at him. Svoboda further testified that when he asked Shell what his problem was, Shell placed his nose near Svoboda's, shouted at him, and then pushed him in the chest. Svoboda fell over his desk, knocking over a chair and objects on the desk, and landed against the wall and the floor. He sustained a small cut on his wrist.

Shell disputes this account somewhat. He concedes pushing Svoboda, but says he

pushed him on the shoulders and not on the chest. He also alleges that Svoboda began the altercation by provoking him with "fighting words," specifically, by calling him a "goddamn liar."

Soj, the other employee also present, largely corroborated Svoboda's version of the events.

Two days after this incident, Host International terminated Shell.

A claims representative for the Department of Jobs and Training determined that Shell was fired for a hot-headed incident, which does not constitute disqualifying misconduct. The referee reversed, and the Commissioner's representative affirmed the referee, concluding that Shell's physical confrontation constituted misconduct disqualifying him from receiving unemployment compensation.

## ISSUE

If an employee pushes a supervisor, causing the supervisor to fall and injure himself, is this behavior excusable as a hot-headed incident or is it disqualifying misconduct?

## DISCUSSION

■ While this court must defer to the Commissioner's representative's findings of fact if they are reasonably supported by the evidence in the record, this court may exercise its independent judgment with respect to questions of law. *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 221 (Minn.1981). An employee discharged for misconduct is disqualified from receiving benefits. Minn. Stat. 268.09, subd. 1(b) (1992). Misconduct is

> conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design or to show an intentional and substantial disregard of the employer's interests or of

the employee's duties and obligations to his employer.

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973).

■ We conclude that, as a matter of law, Shell committed misconduct.[1] A violent assault on a supervisor or manager in response to reasonable supervision is misconduct as a matter of law because it creates danger in the workplace and it interferes with the employer's business.

■ Violence in the workplace is an increasingly prevalent problem and is disruptive of the normal employer/employee relationship. An employer has the right to expect behavior from employees that is not violent. *Hines v. Sheraton Ritz Hotel*, 349 N.W.2d 329, 330 (Minn.App.1984). Because violent behavior interferes with the normal operation of a business, it constitutes misconduct. In this case, Svoboda suffered a relatively minor injury, but, as Shell pushed him, obviously with considerable force, the injury could easily have been more severe.

We further note that the collective bargaining agreement governing Shell's employment specifically prohibits "physical fighting on the premises of the employer."

■ Shell argues, however, that his behavior was not misconduct but, rather, a "hot-headed incident." A hot-headed incident is an isolated instance of an employee losing his temper at work. *Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142, 145 (Minn. 1984). An employee can be terminated for a hot-headed incident, but a hot-headed incident that does not interfere with the employer's business is not disqualifying misconduct for unemployment compensation purposes. *Id.* Examples of hot-headed incidents include shouting at a supervisor (*Windsperger*, 346 N.W.2d at 145) and using vulgar language in front of nursing home residents where the supervisor was partly responsible for the outburst (*Mankato Lutheran Home v. Miller*, 358 N.W.2d 96, 99 (Minn.App.

---

1. Shell's behavior may constitute gross misconduct, but we do not address this possibility because the issue is not before us. *See* Minn.Stat. § 268.09, subd. 1(d) (1992) (gross misconduct includes assault and battery).

**18**

1984), *pet. for rev. denied* (Minn. Feb. 6, 1985)).

 An employer has the right to expect its employees not to engage in conduct that seriously endangers people's safety. *See Hayes v. Wrico Stamping Griffiths Corp.*, 490 N.W.2d 672, 675 (Minn.App.1992). Accordingly, physical confrontation is generally misconduct. *See Tester v. Jefferson Lines*, 358 N.W.2d 143, 145 (Minn.App.1984), *pet. for rev. denied* (Minn. Mar. 13, 1985).

In a few cases, however, this court has determined that behavior involving allegations of physical confrontation was hot-headed, rather than misconduct. *See, e.g., McCoy v. Spicer Off-Hwy. Axle Div.*, 412 N.W.2d 24, 25, 27 (Minn.App.1987); *Norman v. Rosemount, Inc.*, 383 N.W.2d 443, 445–46 (Minn. App.1986), *pet. for rev. denied* (Minn. May 22, 1986); *Oman v. Daig Corp.*, 375 N.W.2d 533, 535, 537–38 (Minn.App.1985). These cases are distinguishable from this one.

In *McCoy*, 412 N.W.2d at 25, 27, the employee, in a fit of temper, threw a hammer on the floor, but away from his supervisor. Although this behavior was arguably a physical confrontation, it did not endanger or hurt anyone. In *Norman*, 383 N.W.2d at 445–46, the employee threw a crumpled ball of paper at his supervisor. Again, this behavior did not seriously endanger anyone. Finally, in *Oman*, 375 N.W.2d at 535, 537–38, the employee, reacting to continued verbal harassment, pushed a coworker into a chair and pulled off the coworker's cap. The employee immediately apologized and walked away. This behavior was not disqualifying misconduct, because the employee attempted to avoid the conflict and earlier had a discussion with her supervisor which demonstrated her interest in maintaining peace in the workplace, her behavior was not dangerous, and she did not injure anyone.

Here, on the other hand, the physical assault was not in response to repeated harassment but, on the contrary, appeared to be largely unprovoked. Further, Shell pushed the supervisor with considerable force, and the supervisor was injured. These actions evince wanton disregard of the employer's interests.

 Finally, Shell urges the "fighting words" doctrine as justification for the assault. The fighting words doctrine permits convictions for a breach of the peace when there is a danger that the speaker will incite the listener with "fighting words." *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 572–73, 62 S.Ct. 766, 769–70, 86 L.Ed. 1031 (1942); John E. Nowak, et al., Constitutional Law (3rd ed.) § 16.38 (1986). This doctrine applies to free speech issues and does not excuse a physical assault. Accordingly, we reject this argument.

### DECISION

Shell was terminated for misconduct, not a hot-headed incident; therefore, he is disqualified from receiving unemployment benefits.

**Affirmed.**