**Abdulahi M. ISSE, Relator,**

v.

**ALAMO RENT–A–CAR, Commissioner of Economic Security, Respondents.**

No. C5–98–1230.

Court of Appeals of Minnesota.

Feb. 9, 1999.

Review Denied April 20, 1999.

Gordon B. Conn, Jr., Faegre & Benson, LLP, Minneapolis, MN (for relator).

Kent E. Todd, Department of Economic Security, St. Paul, MN (for commissioner)

Considered and decided by RANDALL, Presiding Judge, HARTEN, Judge, and SHUMAKER, Judge.

## OPINION

HARTEN, Judge

A representative of the Commissioner of Economic Security reviewed sua sponte and reversed the decision of a reemployment insurance judge that relator did not commit misconduct and was therefore entitled to reemployment insurance benefits. Because we hold that relator did commit misconduct within the meaning of Minn.Stat. § 268.095, subd. 6 (1998), we affirm.

## FACTS

Relator Abdulahi Isse was employed by respondent Alamo Rent–a–Car, Inc., to clean cars. In January 1998, while relator was on an office phone making a medical appointment for his wife, a co-worker approached relator and asked him to return to work because there were cars to clean. Relator responded with an obscenity. After relator finished the phone call, he and the co-worker began arguing. An altercation ensued; relator grabbed the co-worker by the shirt and pushed him against a wall. A third employee separated them. Prior to this incident, there had been no problems with relator's employment. Relator was suspended and later dis-

charged for grabbing and pushing the co-worker.

Relator then sought reemployment insurance benefits. A Department of Economic Security claims representative held that relator had been discharged for reasons other than misconduct and was entitled to benefits. The employer appealed, and a reemployment insurance judge affirmed, relying on *Hamilton v. International Dairy Queen, Inc.* 346 N.W.2d 138 (Minn.1984), and *Oman v. Daig Corp.*, 375 N.W.2d 533 (Minn.App.1985), to hold that neither an isolated use of strong language nor an isolated confrontation with another employee constitutes misconduct.

*Hamilton* relies on a contemporaneously filed decision, *Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142 (Minn.1984), which quoted the definition of misconduct adopted in *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973). That definition excludes from misconduct "inadvertencies or ordinary negligence in isolated instances." *Windsperger*, 346 N.W.2d at 144 (quoting *Tilseth*, 295 Minn. at 374, 375, 204 N.W.2d at 646). *Windsperger* holds "that an isolated hotheaded incident which does not interfere with the employer's business is not misconduct * * * justifying a denial of unemployment compensation benefits." *Id.* at 145. *Oman* reiterates the holding:

> Applying the *Tilseth* standard, the supreme court [in *Windsperger* ] has also held that "an isolated hotheaded incident which does not interfere with the employer's business is not misconduct * * * justifying a denial of unemployment compensation benefits."

375 N.W.2d at 536 (quoting *Windsperger*, 346 N.W.2d at 145).

The reemployment insurance judge's decision was reviewed sua sponte by a commissioner's representative, who reversed on the ground that the new statutory definition of misconduct effective July 1, 1997, did not exclude from misconduct isolated outbursts such as relator's. Relator appeals from the denial of benefits.

## ISSUE

Is an isolated workplace outburst during which an employee angrily grabs and pushes a co-worker misconduct within the meaning of Minn.Stat. § 268.095, subd. 6 (1998)?

## ANALYSIS

 The determination that an employee committed misconduct is a mixed question of fact and law. A reviewing court will affirm if the findings of fact are "not without support in the evidence" and if the conclusion on those facts is not contrary to the statutory mandate. *Colburn v. Pine Portage Madden Bros.*, 346 N.W.2d 159, 161 (Minn.1984).

The commissioner's representative based the findings that relator uttered an obscenity and grabbed and pushed a co-worker on the testimony of an employee who witnessed the altercation and the statement of the employee who separated relator and the co-worker, noting that both sources were persuasive. The commissioner's representative's findings are manifestly not without support in the evidence and must be affirmed.

Nor is the conclusion on those facts contrary to the statutory mandate. The conclusion is based on Minn.Stat. § 268.095, subd. 6 (1998):

> Misconduct is intentional conduct showing a disregard of:
>
> (1) the employer's interest;
>
> (2) the standards of behavior that an employer has the right to expect of the employee; or
>
> (3) the employee's duties and obligations to the employer.

The commissioner's representative found that grabbing and shoving another employee "unquestionably violates the standard of behavior the employer had a right to expect of [relator]."

The recently enacted statutory definition of misconduct closely resembles the common-law definition adopted in *Tilseth*, 295 Minn. 372, 204 N.W.2d 644 (1973). The statute, however, excludes from misconduct only "[i]nefficiency, inadvertence, simple unsatisfactory conduct, or poor performance as a result of inability or incapacity." Minn.Stat. § 268.095, subd. 6. *Tilseth* excluded "mere

inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances * * *," 295 Minn. at 374–75, 204 N.W.2d at 646, and this "isolated instances" language was the basis for the holding that "an isolated hotheaded incident which does not interfere with the employer's business is not misconduct * * *." *Windsperger,* 346 N.W.2d at 145.[1]

▬▬▬ We are not free to supply an "isolated instances" exception to the statutory definition of misconduct.

> [W]hen a statutory question involves the failure of expression rather than the ambiguity of expression, this court is not free to substitute amendment for construction and thereby supply the omissions of the legislature. * * * Moreover, this court is prohibited from adding words to a statute and cannot supply what the legislature either purposely omitted or inadvertently overlooked.

*Tracy State Bank v. Tracy–Garvin Coop.,* 573 N.W.2d 393, 395 (Minn.App.1998) (citations omitted). Because the phrase the legislature omitted was the basis for considering "hotheaded incidents" as an exception to misconduct, that exception is no longer Minnesota law.[2]

## DECISION

The commissioner's representative correctly concluded that relator's conduct fell within the statutory definition of misconduct, i.e., disregard of "the standards of behavior that an employer has the right to expect of the employee," and that relator was not entitled to benefits.

**Affirmed.**

**RANDALL**, Judge (concurring specially).

I concur in the result, but write separately to clear up what may have been a misunderstanding by the commissioner's representative on the state of the law in defining disqualifying "misconduct."

The reemployment insurance judge first determined that relator Isse did not commit misconduct and, thus, was entitled to reemployment benefits. The commissioner's representative who ordered a review, sua sponte, of the reemployment insurance judge's decisions stated in part:

> We note the reemployment insurance judge referenced some Court of Appeals' decisions regarding common law definition of misconduct annunciated by the Supreme Court in *Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 204 N.W.2d 644 (1973). We note, however, that the Minnesota Legislature adopted the statutory definition of misconduct effective July 1, 1997. This abrogated the common law definition and therefore the Court of Appeals' decisions in regard to that common law definition are no longer the law in Minnesota. The statutory definition of misconduct controls.

First of all I note, and the commissioner's attorney at oral argument agreed, that the commissioner's representative, if writing accurately, should have said:

> This abrogated the common law definition, and, therefore, *the Minnesota Supreme Court's decisions* in regards to that common law definition are no longer the law in Minnesota.

The Minnesota Court of Appeals did not write *Tilseth.* The Minnesota Supreme Court did, and all this court did was "reannunciate" the definition of misconduct "annunciated by the supreme court."

---

**1.** *See also McCoy v. Spicer Off–Highway Axle Div.,* 412 N.W.2d 24, 27 (Minn.App.1987) (throwing hammer at the floor during dispute with supervisor did not disqualify); *Norman v. Rosemount, Inc.* 383 N.W.2d 443, 444 (Minn.App. 1986) (throwing crumpled piece of paper at supervisor and walking away did not disqualify) *review denied* (Minn. May 22, 1986); *Oman,* 375 N.W.2d at 535 (isolated confrontation in which claimant threw a small plastic object at co-worker, pushed co-worker's chair and pulled co-work-

er's cap did not disqualify). *But see McGowan v. Executive Express Transp. Enters.,* 420 N.W.2d 592, 595 (Minn.1988) ("We believe that [*Windsperger* ] reach[es] into the outer limits of eligibility. We decline to liberalize further the granting of benefits contained in [it.]")

**2.** We note that caselaw interpreting those elements of the *Tilseth* definition that are reflected in the statute remains good law.

Secondly, I take issue with the commissioner's flat statement that *Tilseth* is no longer the law in Minnesota. Minn.Stat. § 268.095, subd. 6 (1998), defines "misconduct" as:

Misconduct is intentional conduct showing a disregard of:

(1) the employer's interest;

(2) the standards of behavior that an employer has the right to expect of the employee; or

(3) the employee's duties and obligations to the employer. Misconduct also includes negligent conduct by an employee demonstrating a substantial lack of concern for the employment. Inefficiency, inadvertence, simple unsatisfactory conduct, or poor performance as a result of inability or incapacity are not misconduct.

Before this statute was enacted, the *Tilseth* definition of misconduct, in relevant part, was

conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct."

*McGowan v. Executive Express Transp. Enters., Inc.,* 420 N.W.2d 592, 595 (Minn.1988) (quoting *Tilseth v. Midwest Lumber,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quotation omitted)).

It is obvious that the statute tracked *Tilseth* with only minor variations. For instance, the statute uses the term "intentional conduct" and *Tilseth* uses the term "wilful or wanton disregard." In other areas the statute tracks *Tilseth* almost word-for-word. Thus, if perhaps 80% to 90% of *Tilseth* was codified in the statute at issue, it can hardly

be said that *Tilseth* and its progeny are no longer good law.

*Tilseth* did contain the phrase "inadvertencies or ordinary negligence in isolated instances * * * are not to be deemed 'misconduct.'" *Tilseth,* 295 Minn. at 375, 204 N.W.2d at 646. That part of *Tilseth* is not in the statute, but there is nothing affirmative in the statute to specifically exclude inadvertencies or ordinary negligence in isolated instances from becoming a defense by the employee to a charge of disqualifying misconduct by the employer. In fact, the statute seems to indicate otherwise, meaning that the concept has been retained. The statute specifically states that "[i]nefficiency, inadvertence, and simple unsatisfactory conduct" are the types of poor performance that (although they might get you fired) do not disqualify an employee from receiving reemployment benefits. And logic dictates that an inadvertent act or an act of ordinary negligence by an employee on one occasion (the isolated instance) fits easily within the statute's definition of "non-misconduct," e.g., inefficiency or inadvertence or simple unsatisfactory conduct.

On the other hand, if the inefficiency, inadvertence, or simple unsatisfactory conduct continues for a length of time, it might well turn into intentional disqualifying misconduct as defined in the statute. But exactly the same is true, and was true, under *Tilseth.* If you have unsatisfactory conduct, or inadvertent conduct, or ordinary negligent conduct over a sustained period of time, then, of course, that would not be conduct in an "isolated instance." Thus, the statute tracks with *Tilseth* and *Tilseth* tracks with the statute. I suggest that once the statute is read, the interpretation of the facts can be done under the guidance of the Minnesota Supreme Court's *Tilseth* and its progeny, unless and until *Tilseth* is overruled. It has not been to this point, and I conclude it is unlikely that it will be overruled because Minnesota Statute § 268.095, subd. 6, tracks *Tilseth* with only minor changes.