Roger POTTER, Relator,

v.

**NORTHERN EMPIRE PIZZA, INC., Respondent,**

**Department of Employment and Economic Development, Respondent.**

No. A10–1965.

Court of Appeals of Minnesota.

Sept. 6, 2011.

Roger L. Potter, Crookston, MN, pro se relator.

Northern Empire Pizza, Inc., Fargo, North Dakota (respondent employer) Lee B. Nelson, Department of Employment and Economic Development, St. Paul, MN, for respondent Department.

Considered and decided by STAUBER, Presiding Judge; STONEBURNER, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

Roger Potter poked a coworker in the ribcage after the coworker threw Potter's keys. Potter's manager discharged him and Potter began collecting unemployment benefits. The Department of Employment and Economic Development deemed his job-ending incident to be employment misconduct and an unemployment law judge agreed, ending Potter's benefits. Potter argues on appeal that poking his coworker was not a "serious violation," was simple unsatisfactory conduct, was what a reasonable employee would have done, was the result of a good faith error in judgment, and was caused by his manager's deficiencies. Because physical contact between employees arising from conflict in the workplace is serious employment misconduct, and because Potter has identified no exception applicable to employment misconduct decisions, we affirm.

## FACTS

Sixty-three-year-old Roger Potter was fired from his job as a delivery driver for Northern Empire Pizza, Inc., doing business as Domino's Pizza, after he poked 22–year–old coworker Dylan Kaste in his ribcage. Potter describes the incident as follows: While he and Kaste were working overlapping shifts, Kaste grabbed Potter's keys, which were lying near a delivery bag. "[W]ith a loud voice," Kaste said, "[W]hat are these keys doing here[?][T]hey don't belong here on the bag." Kaste then "threw" the keys onto a desk. Potter was "a little bit ticked" that Kaste threw his keys. Kaste filled a pizza-delivery order, and then "instead of saying[,] could you please move, he just [told Potter] move,

now." Potter stepped aside, but because he was "ticked off," he poked Kaste in his side as he passed. Kaste "spun around" and yelled, "you suck." Potter describes the incident as a "spur-of-the-moment decision" that any "senior" in his position would have made. The pizza delivery company discharged Potter the next evening and suspended Kaste. The sole reason for his termination was the single poking incident.

Potter began withdrawing unemployment benefits from the Department of Employment and Economic Development (DEED). But DEED later determined that he was ineligible for benefits and ordered him to repay $1,207. Potter appealed, and an unemployment law judge (ULJ) held that he was discharged for employment misconduct and therefore ineligible for benefits. After reconsidering, the ULJ affirmed his decision. Potter appeals by certiorari to this court.

## ISSUE

Was Potter's poking of his coworker in the ribcage employment misconduct?

## ANALYSIS

When reviewing a ULJ's benefits decision, we may remand, reverse, or modify if the relator's substantial rights were prejudiced by fact findings that are unsupported by substantial evidence or by a decision that is affected by an error of law, made upon unlawful procedure, or is arbitrary and capricious. Minn.Stat. § 268.105, subd. 7(d)(3)–(6) (2010).

We must decide whether the ULJ appropriately determined that Potter was discharged for employment misconduct. The general rule is that an employee who is fired because of employment misconduct is not entitled to unemployment benefits. Minn.Stat. § 268.095, subd. 4(1) (2010).

Employment misconduct means "any intentional, negligent, or indifferent conduct, on the job ... that displays clearly" either "a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee" or "a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2010). In concluding that Potter committed employment misconduct by poking Kaste, the ULJ found that Potter was aware of his employer's reasonable expectations of nonviolence and that poking Kaste "was a clearly serious violation" of those expectations. We review a ULJ's legal determination of whether an act committed by an employee constitutes employment misconduct de novo. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn.App.2006). In doing so, we defer to the ULJ's findings if they are substantially supported by the record. *Id.*

Potter challenges the ULJ's misconduct determination first by claiming that his conduct was not a "serious violation" as defined by the employment-misconduct statute. He also argues that even if it were a serious violation, three exceptions apply: it was "simple unsatisfactory conduct;" a "reasonable employee" would have done the same thing; and it was a "good faith error[ ] in judgment." He also argues that his manager caused the incident. None of these arguments persuades us to reverse.

### Serious Violation of Reasonable Work Standards

■ Potter first contends that poking Kaste was not a "serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." *See* Minn.Stat. § 268.095, subd. 6(a)(1). He emphasizes that the occurrence lasted only "a moment." It is true that a judicially created exception formerly existed for "isolated hotheaded incidents" that did not interfere with an employer's business. *See generally Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142, 144–45 (Minn.1984). And for a short time between 2003 and 2008, the statutory definition incorporated a version of that exception. *See* Minn.Stat. § 268.095, subd. 6(a) (Supp.2003); *Id.* (2004); *Id.* (2006); *Id.* (Supp.2007); *Id.* (2008). But the current statute as most recently amended does not provide a single-incident exception. *Id.* (2010).

It will help to briefly review the rise and fall of the single-incident exception to employment misconduct. Before the legislature passed a statutory definition of employment misconduct, courts defined it. Courts included a single-incident exception to employment misconduct, *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 645–46 (1973), which later developed into a so-called "hotheaded incident" exception, *Windsperger*, 346 N.W.2d at 145. We applied this exception, holding, for example, that it was not employment misconduct for employees, in a single incident, to throw a crumpled piece of paper or even a hammer. *See Norman v. Rosemount, Inc.*, 383 N.W.2d 443, 445–47 (Minn.App.1986) (crumpled paper), *review denied* (Minn. May 22, 1986); *McCoy v. Spicer Off–Highway Axle Div.*, 412 N.W.2d 24, 25, 27 (Minn.App.1987) (hammer). This was after we had held that it was not misconduct even for an employee to push a coworker. *Oman v. Daig Corp.*, 375 N.W.2d 533, 536 (Minn.App.1985). But the supreme court opined in *McGowan v. Executive Express Transp. Enters., Inc.*, that *Windsperger* should be considered the "outer limit" of the exception. 420 N.W.2d 592, 595 (Minn.1988). We later held in *Shell v. Host Int'l (Corp.)* that *any* violence in the workplace is misconduct notwithstanding its occurrence as only a single incident. 513 N.W.2d 15, 17–

18 (Minn.App.1994). So from *Shell* to 1997, the definition of employment misconduct excepted nonviolent, single-incident, hotheaded employee conduct that did not adversely affect the employer.

Then in 1997, the legislature defined "misconduct" by statute. *See* Minn.Stat. § 268.09, subd. 12 (Supp.1997). The definition generally mirrored the judicial definition except that it left out the isolated-incident exception. *Id.* We held that the legislature's omission was intentional and concluded that that statutory definition effectively displaced the judicially developed single-incident exception. *Isse v. Alamo Rent–A–Car,* 590 N.W.2d 137, 139–40 (Minn.App.1999), *review denied* (Minn. Apr. 20, 1999). The no-single-incident-exception definition controlled until 2003, when the legislature added an exception for "a single incident that does not have a significant adverse impact on the employer." Minn.Stat. § 268.095, subd. 6 (Supp. 2003). The new language in the 2003 statute arguably revived the exception of *Tilseth* and its progeny. *See, e.g., Skarhus,* 721 N.W.2d at 344 (discussing the statutory single-incident exception to employee misconduct).

But in 2008, the legislature again amended the definition, this time removing the single-incident exception. *See* Minn. Stat. § 268.095, subd. 6 (Supp.2009). It also added an additional reviewing requirement. The ULJ must now "consider" as an "important" fact whether the discharge involved "only a single incident." *Id.,* at subd. 6(d). This new requirement does not revive the single-incident exception; it instead directs that the ULJ afford weight to the fact of the single-incident nature of the conduct without directing that the conduct be construed as misconduct or not. The current law most resembles the law as it existed between 1997 and 2003, the period in which we decided *Isse* and held that

no isolated-incident or hothead exception applies to employee misconduct. 590 N.W.2d at 140.

Because an isolated hotheaded-incident exception no longer exists, Potter's conduct of poking his coworker, although lasting only "a moment," is not excepted from employment misconduct. We observe that although the issue of the ULJ's compliance with the new statutory "important-fact" requirement was not raised on appeal, the record shows that the ULJ confirmed with testimony from the employer that the poking was the only basis for the discharge. The ULJ therefore followed his duty to "consider" the factor. To the extent the ULJ should have given the factor additional weight, we add that Potter's conduct involved angry physical contact with a coworker, and even under the common-law exception for isolated incidents, angry physical contact between employees constituted employment misconduct regardless of frequency. *See Shell,* 513 N.W.2d at 17. So even weighing heavily the fact that the event was a single incident, the physical nature of Potter's conduct supports the ULJ's conclusion that it was employment misconduct.

Potter also maintains that poking Kaste was not a serious violation because he used his finger, not his keys, as had been originally alleged. Whether Potter used his key or his finger to jab Kaste is disputed. But that dispute does not affect the ULJ's reasoning or our holding. The ULJ concluded simply that Potter "poked [Kaste] in his ribcage," and he did not identify the poking instrument. The ULJ's serious-violation determination therefore did not depend on whether Potter used a key or his finger. The revived caselaw teaches us the general rule that violence in the workplace, however minor, is a serious violation of an employer's reasonable expectations. *See, e.g., Isse,* 590 N.W.2d at 139–40 (hold-

ing that an employee discharged for "grabbing and shoving" his coworker during an argument committed misconduct). We recognize that merely poking a coworker in anger is on the least shocking extreme in the range of physically combative workplace conduct. Extreme or not, however, an employee who intentionally physically contacts another in anger engages in employment misconduct; the conduct is "disruptive of the normal employer/employee relationship" and "interferes with the normal operation of a business," *Shell*, 513 N.W.2d at 17, adversely affecting the employer.

### Simple Unsatisfactory Conduct

■ Potter also argues that his conduct fits into the "simple unsatisfactory conduct" statutory exception of misconduct. *See* Minn.Stat. § 268.095, subd. 6(b)(3). The argument is not convincing. An example of "simple unsatisfactory conduct" existed in *Bray v. Dogs and Cats Limited (1997)*, 679 N.W.2d 182, 185 (Minn.App. 2004). We held that Bray's failure to meet her employer's expectations of turning paperwork in on time, arranging meetings, disciplining workers, and managing schedules was "simple unsatisfactory conduct." *Id.* We "glean[ed] from the record as a whole [that Bray] attempted to be a good employee but just wasn't up to the job and was unable to perform her duties to the satisfaction of the employer." *Id.* By contrast, Potter initiated retaliatory physical contact with a coworker—conduct that exceeds the "simple unsatisfactory" exception reserved for failures to meet basic job performance standards.

### Reasonable Under the Circumstances

■ We are also not persuaded by Potter's contention that his conduct fits into another statutory exception: "conduct an average reasonable employee would have engaged in under the circumstances." *See*

Minn.Stat. § 268.095, subd. 6(b)(4). He asserts that anyone his age would have given the "little punk" Kaste "a slap" and then called his parents. Maybe so, but this fact was not proven, and on the undeveloped record we assume and hope that many reasonable people would have withstood the provocation without slapping or poking.

### Good Faith Error in Judgment

■ Potter argues that his conduct also fits into the statutory exception for "good faith errors in judgment if judgment was required." Minn.Stat. § 268.095, subd. 6(b)(6). But no judgment was required of him. Potter knew that physical contact between employees was prohibited. Potter's employer had already made the necessary no-violence judgment and Potter's duty was simply to follow the policy without having any discretion to choose otherwise.

### Manager's Culpability

■ Potter also blames his manager, David Garver, for the incident. He claims that Garver failed to intervene when he "heard something" happening that day and failed to reprimand Kaste for his previous taunting behavior. He argues that Garver's failure to "settle and stop this type of dealing" between Kaste and Potter allowed Kaste to think he could "do something to get [Potter] fired." He also asserts that Garver generally "neglected his duty to keep a safe workplace." DEED did not respond to Potter's blame-the-manager defense. The defense fails because there is no exception for misconduct that could have been avoided by better management actions. *See* Minn.Stat. § 268.095, subd. 6(b) (listing exceptions to employment misconduct).

## DECISION

The former single-incident or hothead-incident exception to the definition of employment misconduct no longer exists and employers may reasonably expect employees to refrain from engaging in even single acts of combative physical contact. The single incident of Potter intentionally poking his coworker in the ribcage constitutes employment misconduct. Because no exception to Potter's employment misconduct applies, we affirm the ULJ's determination that Potter is ineligible to receive unemployment benefits.

**Affirmed.**