*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1247**

Deborah A. Weckert,
Relator,

vs.

United Healthcare Services, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed February 2, 2015
Affirmed
Schellhas, Judge**

Department of Employment and Economic Development
File No. 32291094-3

Deborah A. Weckert, Cloquet, Minnesota (pro se relator)

United Healthcare Services, c/o TALX UCM Services, St. Louis, Missouri (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

        Considered and decided by Smith, Presiding Judge; Ross, Judge; and Schellhas, Judge.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Relator challenges an unemployment-law judge's decision that she is ineligible for unemployment benefits because she was discharged for employment misconduct. We affirm.

## FACTS

Relator Deborah Weckert worked as a billing analyst for respondent United Healthcare Services Inc. from March 2003 until February 18, 2014. For the last five years, Weckert telecommuted, working from her home on an hourly basis with a set schedule of 8:00 a.m. to 4:30 p.m.

United Healthcare's policy provided that:

> UnitedHealth Group pays its employees for all time worked. Further, the company pays non-exempt employees overtime pay according to guidelines set forth by the Fair Labor Standards Act (FLSA) and in accordance with certain state laws. . . .
>
> . . . .
>
> It is the policy of UnitedHealth Group to pay employees for all time worked. Toward that end, you MUST accurately record all the time that you work. Record all time worked, including overtime hours, as actual hours worked[.] . . .
>
> . . . .
>
> *Before working overtime, you must get approval from your manager. Failure to obtain pre-approval* for overtime will not void y[our] entitlement to be paid for the time you worked, but it *may subject you to disciplinary action, up to and including termination of employment*.

(Emphasis added.) Weckert received a copy of the policy when she began her employment with United Healthcare and knew that she was subject to the policy throughout her employment. Specifically, Weckert knew that she was permitted to work only from 8:00 a.m. to 4:30 p.m., that she needed managerial preapproval to work overtime, and that she was required to accurately report her time worked.

In January 2014, Weckert's supervisor pulled a report from which she discovered numerous days on which Weckert had worked "over her 4:30 stop time." Weckert subsequently admitted to her supervisor that she had been working past her stop time but was unsure how long she had been doing so. Weckert's supervisor instructed her to research and determine when she began working past her stop time. Weckert pulled multiple reports, which revealed she had been working past her stop time, i.e., working overtime, during 2011, 2012, and 2013, "almost on a daily, daily occurrence." United Healthcare is obligated to pay Weckert for two years of the overtime at an estimated cost of $6,000 to $10,000. United Healthcare discharged Weckert because of her noncompliance with company policy.

Weckert applied for unemployment-insurance benefits, and the Minnesota Department of Employment and Economic Development (DEED) determined that she was eligible to receive benefits. United Healthcare appealed DEED's determination, and an unemployment-law judge (ULJ) conducted a hearing at which Weckert and her supervisor testified. The ULJ decided that Weckert is ineligible to receive unemployment benefits because United Healthcare discharged her for employment misconduct. Weckert requested reconsideration, and the ULJ affirmed the decision.

This certiorari appeal follows.

**D E C I S I O N**

The purpose of chapter 268, Minnesota's unemployment-insurance program, is to assist those who are unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2014);[1] *see Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (referring to "policy that unemployment compensation is paid only to those persons unemployed through no fault of their own" (quotations omitted)). "[E]ntitlement to unemployment benefits must be determined based upon that information available without regard to a burden of proof." Minn. Stat. § 268.069, subd. 2 (2014). "There is no equitable or common law denial or allowance of unemployment benefits." Minn. Stat. § 268.069, subd. 3 (2014).

When reviewing a ULJ's unemployment-benefits decision, an appellate court may affirm the decision of the ULJ or remand the case for further proceedings, or the court may reverse or modify the decision if the relator's substantial rights may have been prejudiced because the findings, inferences, conclusion, or decision is made upon unlawful procedure, affected by other error of law, unsupported by substantial evidence in view of the entire record as submitted, or arbitrary or capricious. Minn. Stat. § 268.105, subd. 7(d) (2014). An appellate court reviews the ULJ's factual findings in the light most favorable to the decision and "will not disturb them when they are sustained by

---

[1] We apply the most recent version of statutes in this opinion because the applicable statutes have not been amended in relevant part. *See Interstate Power Co. v. Nobles Cnty. Bd. of Comm'rs*, 617 N.W.2d 566, 575 (Minn. 2000) (stating that, generally, "appellate courts apply the law as it exists at the time they rule on a case").

4

substantial evidence." *Peterson v. Ne. Bank—Minneapolis*, 805 N.W.2d 878, 880 (Minn. App. 2011). An appellate court "give[s] deference to the credibility determinations made by the ULJ" but "review[s] the ULJ's ineligibility determination de novo, construing narrowly statutory bases to disqualify applicants." *Neumann v. Dep't of Emp't & Econ. Dev.*, 844 N.W.2d 736, 738 (Minn. App. 2014) (quotation omitted).

In this case, we must decide whether the ULJ appropriately determined that Weckert was discharged for employment misconduct. Generally, "an employee who is fired because of employment misconduct is not entitled to unemployment benefits." *Potter v. N. Empire Pizza, Inc.*, 805 N.W.2d 872, 874 (Minn. App. 2011) (citing Minn. Stat. § 268.095, subd. 4(1) (2010)), *review denied* (Minn. Nov. 15, 2011). "Employment misconduct means any intentional, negligent, or indifferent conduct, on the job . . . that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a) (2014). "Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law." *Stagg*, 796 N.W.2d at 315 (quotation omitted). "[W]hether a particular act constitutes disqualifying misconduct is a question of law . . . ." *Id.* "Whether the employee committed a particular act is a question of fact." *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008).

"As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644

N.W.2d 801, 804 (Minn. 2002). "An employer has a right to expect that its employees will abide by reasonable instructions and directions." *Vargas v. Nw. Area Found.*, 673 N.W.2d 200, 206 (Minn. App. 2004), *review denied* (Minn. Mar. 30, 2004). "[W]hat is reasonable will vary according to the circumstances of each case." *Id.* (quotations omitted). Failure to abide by an employer's timecard policy and falsely reporting time worked may constitute employment misconduct. *See Ruzynski v. Cub Foods, Inc.*, 378 N.W.2d 660, 662−63 (Minn. App. 1985) (affirming ineligibility determination based on finding "that [employee] falsified his time card and knowingly violated [employer]'s time card policy").

Challenging the ULJ's decision that she was discharged for misconduct, Weckert argues that United Healthcare gave her no preliminary warnings prior to termination, that her "misconduct was not intended to cause harm to anyone but to offer a faster service for customer issues to which both [United Healthcare] and the customer would benefit," and that her overtime hours were inflated because they were not adjusted to reflect time spent at classes that she taught and attended three days per week.

*Lack of preliminary warnings*

Weckert argues that United Healthcare did not give her "the courtesy of following the company's three-step disciplinary process." But the record contains no evidence of a three-step disciplinary process. Regardless, "the focus of the inquiry is the employee's conduct, not that of the employer." *Stagg*, 796 N.W.2d at 316. Even assuming that United Healthcare had a three-step disciplinary process, "an employee's expectation that the employer will follow its disciplinary procedures has no bearing on whether the

6

employee's conduct violated the standards the employer has a reasonable right to expect or whether any such violation is serious." *Id.*

*Weckert's misconduct not intended to cause harm*

We construe Weckert's argument to be that her actions constituted a good-faith error, rather than employment misconduct. A "good faith error[] in judgment if judgment was required" is not employment misconduct. Minn. Stat. § 268.095, subd. 6(b) (2014). But by its terms, the statutory exception for good-faith errors applies only "if judgment was required." *Id.*, subd. 6(b)(6); *see also Potter*, 805 N.W.2d at 877 (concluding that good-faith errors exception did not apply because "Potter's duty was simply to follow the [employer's] policy without having any discretion to choose otherwise"). Here, United Healthcare's policy required Weckert to accurately report her time worked and to obtain managerial preapproval for overtime. As in *Potter*, Weckert's duty was simply to follow United Healthcare's policy. Weckert's conduct does not fit into the statutory exception for good-faith errors.

*Inflated report of overtime hours*

In her request for reconsideration, Weckert argued that her overtime hours were inflated because they were not adjusted to reflect time spent at classes that she attended three nights per week. The ULJ concluded that the additional information does not change the outcome of the decision. We agree. United Healthcare had reasonable expectations that Weckert would accurately report her time worked and would obtain managerial preapproval for overtime. Regardless of whether Weckert violated United

7

Healthcare's reasonable expectations for hours or minutes on any given day, she repeatedly violated the reasonable expectations for three years.

We conclude that the ULJ properly determined that United Healthcare had reasonable expectations that Weckert would accurately report her time worked and would refrain from working overtime without obtaining managerial preapproval. Substantial evidence in the record supports the ULJ's finding that Weckert violated United Healthcare's reasonable expectations and the ULJ's conclusion that Weckert's actions were a serious violation of the standards of behavior that United Healthcare had the right to reasonably expect. The ULJ therefore correctly concluded that United Healthcare discharged Weckert for employment misconduct and that she is not entitled to unemployment benefits.

**Affirmed.**