*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0050**

Debra Barrett,
Relator,

vs.

Jourdain/Perpich Extended Care Facility, Inc.,
Respondent,
Department of Employment and Economic Development,
Respondent.

**Filed August 22, 2016
Affirmed in part and remanded
Reyes, Judge**

Department of Employment and Economic Development
File No. 33860168-3

Debra Barrett, Redby, Minnesota (pro se relator)

Jourdain/Perpich Extended Care Facility, Redlake, Minnesota (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department)

Considered and decided by Schellhas, Presiding Judge; Reyes, Judge; and

Muehlberg, Judge.*

––––––––––––––––––––

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**REYES**, Judge

In this unemployment-compensation appeal, relator challenges a determination by an unemployment-law judge (ULJ) on reconsideration that relator is ineligible for unemployment benefits because she was discharged from her employment for employment misconduct. We affirm in part and remand.

## FACTS

In July 1993, relator Debra Barrett began her employment with respondent employer Jourdain/Perpich Extended Care Facility, Inc. Relator worked full time in housekeeping. In July 2015, relator assaulted N.A., the director of nursing. That same day, respondent employer terminated relator for the assault.

Relator applied for and was denied unemployment benefits by respondent Minnesota Department of Employment and Economic Development (DEED) on the basis that she was discharged for employment misconduct.[1] Relator appealed DEED's determination of ineligibility, and a ULJ held an evidentiary hearing. At the hearing, relator testified on her own behalf. Respondent-employer's project manager, M.Z., and current administrator, Y.W., testified on its behalf.

Following the hearing, the ULJ determined that relator is ineligible for employment benefits because she was terminated for employment misconduct. Relator

---

[1] Relator's determination of ineligibility from DEED explicitly stated that she was ineligible for unemployment benefits and that her "conduct was not aggravated employment misconduct because the conduct did not amount to a gross misdemeanor or a felony. However, the conduct was employment misconduct."

filed a request for reconsideration, and the ULJ affirmed its initial determination. This certiorari appeal follows.

## D E C I S I O N

When reviewing the ULJ's decision, we may affirm, reverse, modify, or remand the decision if it is in violation of constitutional provisions, in excess of statutory authority or jurisdiction of the department, made upon unlawful procedure, affected by an error of law, unsupported by substantial evidence, or arbitrary and capricious. Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015). The purpose of the Minnesota Unemployment Insurance Law is to assist those who are "unemployed through no fault of their own." Minn. Stat. § 268.03, subd. 1 (2014). It "is remedial in nature and must be applied in favor of awarding benefits," and any statutory provision precluding receipt of benefits "must be narrowly construed." Minn. Stat. § 268.031, subd. 2 (2014). There is no burden of proof in unemployment-insurance proceedings, nor is there equitable or common-law denial or allowance of benefits. Minn. Stat. § 268.069, subds. 2, 3 (2014).

Appellate courts "review the ULJ's factual findings in the light most favorable to the decision." *Stagg v. Vintage Place, Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (quotation omitted). We will affirm so long as substantial evidence supports the ULJ's findings. *Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 529 (Minn. App. 2007). We have previously concluded that substantial evidence supports the findings where witness "testimony that was credited was corroborated by other testimony and evidence, while another's testimony that was not credible was deemed not believable

3

based on the facts asserted." *Id*. at 532 (citing *Saif Food Market v. Comm'r, Dep't of Health*, 664 N.W.2d 428, 430-31 (Minn. App. 2003)).

**I.      Relator is not entitled to unemployment benefits.**

We construe relator's argument to be that she is entitled to unemployment benefits because she worked for respondent employer for 23 years. We disagree.

An employee who is discharged from employment for employment misconduct is ineligible to receive unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). Employment misconduct is "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." *Id*., subd. 6(a) (2014).

Under Minnesota law, violent behavior in the workplace constitutes misconduct "because it creates danger in the workplace and it interferes with the employer's business." *Shell v. Host Int'l*, 513 N.W.2d 15, 17 (Minn. App. 1994). And "employers may reasonably expect employees to refrain from engaging in even single acts of combative physical contact." *Potter v. N. Empire Pizza, Inc.*, 805 N.W.2d 872, 878 (Minn. App. 2011), *review denied* (Minn. Nov. 15, 2011). "Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law." *Stagg*, 796 N.W.2d at 315 (quotation omitted). While the employee's involvement in the specific act is an issue of fact, *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006), whether the facts establish disqualifying employment misconduct is a question of law that we review de novo. *Stagg*, 796 N.W.2d at 315.

4

As an initial matter, relator fails to cite statutory authority supporting her argument premised on equitable principles. Nonetheless, there is no equitable allowance of benefits for unemployment benefits. Minn. Stat. § 268.069, subd. 3. As such, relator's argument that she is entitled to benefits based on her years of service fails.

Moreover, the record supports the ULJ's factual findings and legal conclusion. Relator was initially involved in a verbal disagreement with another employee, K.J. The argument between relator and K.J. escalated. Subsequently, N.B., the administrator at that time, informed relator that she needed to go home. While relator was preparing to go home, N.A. called relator a derogatory racial slur.[2] In retaliation, relator punched N.A. in the head, causing N.A. to hit a copy machine and a chair. N.A. went to the hospital and was diagnosed with a concussion.

While relator claims that she does not remember punching N.A., she does acknowledge that she "lost it" because she felt picked on at work and because she had been called a racial slur. Relator's conduct was contrary to respondent employer's personnel policy, which sets forth expectations for professional conduct, and was a "serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." Minn. Stat. § 268.095, subd. 6(a)(1); *see also Potter*, 805 N.W.2d at 878. Because the evidence supports the ULJ's findings, we conclude that

---

[2] Our conclusion that relator engaged in employment misconduct should not be construed to condone in any way N.A.'s use of a derogatory racial slur against relator. The use of it by a director of nursing is particularly improper.

relator was discharged for the employment misconduct of violent behavior in the workplace and therefore is ineligible for unemployment benefits. *Id.*, subd. 4(1).

## II. The ULJ erred by failing to address whether relator's conduct amounts to aggravated employment misconduct.

Under Minnesota law, aggravated employment misconduct is "the commission of any act, on the job or off the job, that would amount to a gross misdemeanor or felony if the act substantially interfered with the employment or had a significant adverse effect on the employment." Minn. Stat. § 268.095, subd. 6a(a)(1) (2014). An employee who is discharged for aggravated employment misconduct is ineligible to receive unemployment benefits and is subject to cancellation of the wage credits that she would have earned from that employment. *Id.*, subds. 4(2), 10(c) (2014).

The ULJ found that relator assaulted N.A. and gave her a concussion. But the ULJ did not make a determination as to whether relator's conduct constituted aggravated employment misconduct, which DEED argues was error. We agree. DEED initially asserts that "the level of crime charged, or whether the individual is charged at all" is not dispositive of a ULJ's conclusion of aggravated employment misconduct. DEED cites *Manos v. First Bank Minnehaha* to support this proposition. 357 N.W.2d 372 (Minn. App. 1984) (concluding that Manos's failure to report overpayment in her paychecks "could fall within the theft statute and thus can be considered gross misconduct connected with her employment"). DEED further argues that, the ULJ must first determine, based on a preponderance of the evidence, whether the act constitutes a gross misdemeanor or a felony under Minnesota law. Then the ULJ must determine whether

6

the "act substantially interfered with the employment or had a significant adverse effect on the employment." Minn. Stat. § 268.095, subd. 6a(a)(1).

The record reflects that the ULJ considered the severity of relator's crime, and stated that the severity "would make a difference." And, while the parties disagreed as to the severity of the charged crime, the record reflects that relator was charged with misdemeanor second-degree assault under Red Lake Tribal Code. No evidence was presented as what the presumptive charge would have been under Minnesota state law.

But the ULJ does not need to determine the severity of relator's actual assault charge. *Manos* provides that the ULJ may determine whether relator's conduct could fall "within the [assault] statute and thus can be considered gross misconduct." *Manos*, 357 N.W.2d at 376. Under Minnesota law, third-degree-felony assault is one in which "substantial bodily harm" is inflicted on another. Minn. Stat. § 609.223, subd. 1 (2014). Substantial bodily harm is defined as "bodily injury . . . which causes a temporary but substantial loss or impairment of the function of any bodily member or organ." Minn. Stat. § 609.02, subd. 7a. (2014).

Here, the ULJ found that relator punched N.A. in the head, causing a concussion.[3] Other than finding that N.A. suffered a concussion, the ULJ failed to make any additional findings as to whether her conduct "would amount to a gross misdemeanor or felony if the act substantially interfered with the employment or had a significant adverse effect on

---

[3] According to the record, a concussion is defined as "a type of injury to the head that causes a minor injury to the brain. Concussions can cause symptoms ranging from brief confusion to a true loss of consciousness (being knocked out)."

the employment."  Minn. Stat. § 268.095, subd. 6a(a)(1).  Therefore, the limited record does not contain sufficient facts for us to determine whether or not relator committed aggravated employment misconduct.  And we are not a fact-finding court.  *See Stiff v. Associated Sewing Supply Co.*, 436 N.W.2d 777, 779 (Minn. 1989) ("[A]n appellate court's limited scope of review circumscribes additional fact finding by it.").  Because the ULJ failed to make specific factual findings regarding N.A.'s condition and because the ULJ failed to reach a legal conclusion regarding aggravated employment misconduct, we remand on this issue to the ULJ for further proceedings consistent with this opinion. On remand, the ULJ may open the record and hold an evidentiary hearing to develop the record, at its discretion.

 **Affirmed in part and remanded.**