*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0321**

Valerie Coykendall,
Relator,

vs.

EquiMed Corporation,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed November 10, 2025
Affirmed
Harris, Judge**

Department of Employment and Economic Development
File No. 50900465-3

Valerie Coykendall, Wayzata, Minnesota (pro se relator)

David R. Forro, Buffalo, Minnesota (for respondent employer)

Melannie M. Markham, Keri A. Phillips, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Harris, Presiding Judge; Connolly, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**HARRIS**, Judge

In this certiorari appeal from the decision of an unemployment-law judge (ULJ), relator challenges the ULJ's conclusion that she is ineligible for unemployment benefits

because she was discharged for employment misconduct. She argues that (1) the ULJ's determination that she was discharged for employment misconduct was not supported by substantial evidence, and (2) the ULJ erred by failing to consider any exceptions to ineligibility based on employment misconduct. Because we conclude that the ULJ's determination that relator was discharged for employment misconduct was supported by substantial evidence, and none of the statutory exceptions to ineligibility based employment misconduct apply, we affirm.

**FACTS**

The following facts are drawn from the testimony and exhibits in the record before the ULJ. Relator Valerie Coykendall worked as a billing specialist for respondent EquiMed Corporation (EquiMed), a medical-device company, from February 2023 to July 2024.[1]

In December 2023, Coykendall emailed her colleagues about implementing a change to their billing process without discussing the change with her superiors. The human-resources manager and vice president of administration at EquiMed instructed Coykendall not to email her colleagues about their job performance or to implement process changes without consulting with the vice president of administration first. In March 2024, Coykendall again sent emails to her colleagues about their job performance stating, "Am I the only one doing this?" and "How many more of these am I going to find?"

---

[1] EquiMed is a small company that provides heart condition monitoring services for clinics with cardiac patients. Coykendall was one of five billing specialists who handled monthly billing on behalf of EquiMed.

She did this without first consulting with the vice president of administration. The human-resources manager and vice president of administration spoke with Coykendall and reiterated the expectation that she should not email her colleagues about job performance or process changes without discussing it with the vice president of administration. Coykendall received a verbal warning from EquiMed for the emails. Later that month, the human-resources manager and vice president of administration told Coykendall that she needed to treat her colleagues with respect and to refrain from making derogatory comments about the quality of their work. Soon after this conversation, Coykendall made two social-media posts about her colleagues, referring to them as "lazy," "stupid," and "ignorant." Coykendall received a written warning from EquiMed for her social-media posts and for misappropriating work time and resources for personal matters.

In May 2024, Coykendall, suspecting that EquiMed was monitoring her computer activity, began leaving notes on her computer directed at EquiMed. Coykendall wrote, "Are you looking at everyone's computer? No? [Then] that is harassment and retaliation. Very illegal." On another occasion, Coykendall wrote, "Did you find what you were looking for????? Can I interest you in a hobby? Volunteer work?" Coykendall also wrote, "Hi, having fun? Found anything yet? Didn't think so. You won't so you can stop now." Coykendall also changed her computer passwords and turned off her internet activity tracker without seeking permission from EquiMed. Additionally, Coykendall began taking

pictures of coworkers' computer screens. Coykendall received a written warning from EquiMed.[2]

In July 2024, EquiMed notified Coykendall that she was discharged for gross insubordination, inability to work with other employees, disrespecting management, not following company policies, and misappropriating company time and resources to work on personal matters.

Coykendall later applied to respondent Minnesota Department of Employment and Economic Development (DEED) for unemployment benefits. DEED determined Coykendall was ineligible for benefits because she was discharged for employment misconduct. Coykendall administratively appealed the DEED determination.

The ULJ conducted a telephone hearing to determine whether Coykendall was discharged for employment misconduct. The ULJ heard testimony from Coykendall and the vice president of administration and the human-resources manager at EquiMed.

In a written decision, the ULJ determined that Coykendall was discharged for employment misconduct and therefore was ineligible to receive employment benefits. Coykendall requested reconsideration of the ULJ's determination. The ULJ denied the request and affirmed. This certiorari appeal follows.

**DECISION**

Coykendall challenges the ULJ's decision that she is ineligible for unemployment benefits. Specifically, Coykendall argues that "not getting along with coworkers,"

---

[2] The warning stated she was not allowed to change passwords, and it was inappropriate for her to monitor other employees' activities.

disrespecting management, and "[i]inappropriate use of computers and resources" is not employment misconduct.

When reviewing the ULJ's decision, we may affirm the decision or remand for further proceedings. Minn. Stat. § 268.105, subd. 7(d) (2024). Alternatively, we may reverse or modify the ULJ's decision when it may have prejudiced relator because the decision, among other things, is unsupported by substantial evidence. *Id.*, subd. 7(d)(5). Substantial evidence is "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Dourney v. CMAK Corp.*, 796 N.W.2d 537, 539 (Minn. App. 2011) (quotation omitted).

When an employer discharges an employee for employment misconduct, the employee is disqualified from unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2024); *see also Wichmann v. Travalia & U.S. Directives, Inc.*, 729 N.W.2d 23, 27 (Minn. App. 2007). Whether an employee committed employment misconduct that disqualifies them from unemployment benefits is a mixed question of law and fact. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (citing *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002)). "We view the ULJ's factual findings in the light most favorable to the decision, giving deference to the credibility determinations made by the ULJ." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006) (citations omitted). "In doing so, we will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Id.* (citing Minn. Stat. § 268.105, subd. 7(d) (Supp. 2005)). But we review whether the facts show that an employee engaged in employment

5

misconduct de novo. *See id.* We review de novo whether the facts found by the ULJ constitute employment misconduct. *Schmidgall*, 644 N.W.2d at 804.

Coykendall argues the ULJ's decision of ineligibility should be reversed because (1) the factual findings made by the ULJ are not supported by substantial evidence, and (2) the ULJ erred in failing to consider any statutory exceptions to employment misconduct. We address each of Coykendall's arguments regarding the ULJ's decision that she is ineligible for unemployment benefits in turn.

## I. The ULJ's determination that Coykendall was discharged for employment misconduct is supported by substantial evidence.

An employee who is discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1). Employment misconduct is "any intentional, negligent, or indifferent conduct, on the job or off the job, that is a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." *Id.*, subd. 6(a) (2024). For conduct to be intentional, it must be deliberate, and not accidental. *Houston v. Int'l Data Transfer Corp.*, 645 N.W.2d 144, 149 (Minn. 2002). An employee's conduct is employment misconduct if the employee "refus[es] to abide by an employer's reasonable policies and requests." *Schmidgall*, 644 N.W.2d at 804. Generally, "if the request of the employer is reasonable and does not impose an unreasonable burden on the employee, the employee's refusal to abide by the request constitutes misconduct." *Vargas v. Nw. Area Found.*, 673 N.W.2d 200, 206 (Minn. App. 2004), *rev. denied* (Minn. Mar. 30, 2004). Reasonableness varies by the circumstances of the case. *Sandstrom v. Douglas Mach. Corp.*, 372 N.W.2d 89, 91 (Minn. App. 1985).

6

"When an employee's refusal to carry out a directive of the employer is deliberate, calculated, and intentional, then the refusal is misconduct." *Schmidgall*, 644 N.W.2d at 806.

Here, the ULJ determined that Coykendall's engaging in disrespectful behavior toward her colleagues, leaving inappropriate messages on her computer directed at her EquiMed superiors, and misappropriating work time and resources on personal matters constituted employment misconduct. The ULJ determined that EquiMed had a right to reasonably expect that Coykendall would follow the standards of behavior that had been communicated to her.

First, Coykendall argues that her conduct toward her colleagues did not constitute misconduct. But an employee's conduct constitutes employment misconduct if the employee "refus[es] to abide by an employer's reasonable policies and requests." *Id.* at 804. "An employer has a right to expect that its employees will abide by reasonable instructions and directions." *Vargas*, 673 N.W.2d at 206. EquiMed directed Coykendall to treat her colleagues with respect and refrain from making derogatory comments about the quality of their work. After receiving these directions, Coykendall made disparaging remarks about her colleagues on social media. EquiMed's instruction that Coykendall treat her colleagues with respect was reasonable. EquiMed had the right to expect that employees remain professional and respectful at work. And Coykendall's conduct demonstrated a refusal to abide by EquiMed's requests. In sum, there is substantial support in the record for the ULJ's determination that Coykendall's behavior toward her colleagues constituted employment misconduct.

7

As it relates to disrespecting management by leaving messages on her computer directed at EquiMed, Coykendall conceded at the hearing that she left messages on her computer, but she nevertheless argues that her actions did not constitute misconduct; rather it was a matter of choosing not to "suffer abuse" due to "undue scrutiny." This argument is unavailing.

Coykendall deliberately left several messages on her computer because she suspected EquiMed was monitoring her computer activity, and she intended for EquiMed to find them. Coykendall's conduct demonstrated a serious violation of the standards of behavior that EquiMed had a right to reasonably expect of its employees. In sum, there is substantial evidence in the record to support the ULJ's determination that Coykendall's messages directed toward EquiMed constituted employment misconduct.

Coykendall next argues that personal use of company time and resources did not constitute misconduct. She alleges that other employees, and even management, used their computers for personal reasons. We are not persuaded.

An employee's known violation of an employer's directions constitutes employment misconduct because such actions evince willful disregard of the employer's interests. *Schmidgall*, 644 N.W.2d at 806. "This is particularly true when there are multiple violations of the same rule involving warnings or progressive discipline." *Id.* at 806-07. Here, Coykendall misappropriated work time and resources to work on personal matters, including drafting a discrimination case against EquiMed during non-break times. Coykendall received a written warning from EquiMed explicitly prohibiting her from using work time and resources for personal matters. After receiving this warning, Coykendall

8

continued to use company resources for personal matters. Coykendall's knowing violation of EquiMed's explicit instruction not to misappropriate company time and resources displays a willful disregard of EquiMed's interest. In sum, there is substantial evidence in the record to support the ULJ's determination that Coykendall's misappropriation of company time and resources constituted employment misconduct.

Finally, although Coykendall concedes that she was responsible for one instance of insubordination, she argues that she should not have been discharged because this single incident does not constitute employment misconduct.

Whether an employee is discharged for conduct involving a single incident is "an important fact that must be considered in deciding whether the conduct rises to the level of employment misconduct." Minn. Stat. § 268.095, subd. 6(d) (2024). We are unpersuaded by Coykendall's argument that she was discharged for a single incident of insubordination. Evidence in the record sufficiently supports the ULJ's findings that Coykendall was discharged from EquiMed only after receiving numerous verbal and written warnings about her misconduct.

In sum, the record supports the ULJ's findings that EquiMed articulated reasonable policies regarding the use of work time and resources for personal matters and respectful communication with colleagues and management. Coykendall's misappropriation of work time and resources for personal matters and disrespectful behavior towards her colleagues at EquiMed were "serious violation[s] of the standards of behavior" that EquiMed had a reasonable right to expect from her. *See id.*, subd. 6(a) (2024); *see also Schmidgall*, 644 N.W.2d at 804.

Because substantial evidence in the record supports the ULJ's factual findings and credibility determination, and the facts support a determination that Coykendall was discharged for employment misconduct, we conclude that the ULJ did not err in deciding that Coykendall was ineligible to receive unemployment benefits. *See* Minn. Stat. § 268.095, subd. 4.

## II. The ULJ did not err in failing to consider any statutory exceptions to employment misconduct.

Coykendall argues that, even if her actions constituted employment misconduct, they fit within three of the statutory exceptions to ineligibility based on employment misconduct: simple unsatisfactory conduct, conduct an average reasonable employee would have engaged in under the circumstances, and good faith errors in judgment if judgment was required. *See id.*, subd. 6(b)(3), (4), (6) (2024). This argument is unavailing.

Coykendall first argues that she engaged in "simple unsatisfactory conduct." We have already determined that the record supports the ULJ's credibility determination that Coykendall committed a knowing violation of a policy. And we are not convinced that the circumstances show that Coykendall "attempted to be a good employee but just wasn't up to the job and was unable to perform her duties to the satisfaction of the employer." *Potter v. N. Empire Pizza, Inc.*, 805 N.W.2d 872, 877 (Minn. App. 2004) (quotation omitted). To the contrary, the record reflects that Coykendall repeatedly disregarded directions, used company resources to work on personal matters, left messages on her work computer to antagonize management, and was discharged for insubordination. Accordingly, the record

10

supports the ULJ's findings that Coykendall's repeated conduct was insubordinate and rose to the level of employment misconduct and not "simple unsatisfactory conduct."

Coykendall next argues that her conduct was "conduct an average reasonable employee would have engaged in under the circumstances." Minn. Stat. § 268.095, subd. 6(b)(4). Coykendall contends that her personal use of her work computer did not constitute employment misconduct because other employees also used their work computers for personal matters. But a "[v]iolation of an employer's rules by other employees is not a valid defense to a claim of misconduct." *Dean v. Allied Aviation Fueling Co.*, 381 N.W.2d 80, 83 (Minn. App. 1986). Coykendall intentionally violated a reasonable employment policy by using her computer for personal use. Her conduct therefore does not fit the statutory exception for conduct an average reasonable employee would have engaged in under the circumstances.

Coykendall lastly argues that her conduct was a good-faith error in judgment rather than employment misconduct. The statutory definition of employment misconduct excludes "good faith errors in judgment *if judgment was required*." *See* Minn. Stat. § 268.095, subd. 6(b)(6) (emphasis added). But no judgment was required of Coykendall after EquiMed explicitly told Coykendall to treat her colleagues and the company with respect and to refrain from misappropriating work time and resources. Consequently, the error-in-judgment exception does not apply. Because the statutory exceptions to employment misconduct articulated by Coykendall do not apply, the ULJ did not err by failing to consider the statutory exceptions to employment misconduct in determining that Coykendall was ineligible for unemployment benefits.

11

In sum, because the record evidence supports the findings of the ULJ and those findings support the conclusion that Coykendall was properly discharged for employment misconduct under Minnesota Statutes section 268.095, subdivision 6(a), and because none of the statutory exceptions to ineligibility based employment misconduct identified by Coykendall apply, the ULJ did not err by determining that Coykendall was ineligible for unemployment benefits.

**Affirmed.**